Argued June 4; reversed July 28, 1931

SCHRAMM, Superintendent of Banks, *v.*
BURKHART et al.
(2 P. (2d) 14)

*C. A. Wintermeier,* of Eugene (Howard M. Brownell, of Eugene, on the brief), for appellants.

*L. G. Lewelling,* of Albany, for respondent.

RAND, J. This suit was instituted by the bringing into court of $2,140.64 and the filing of a bill of interpleader by the State Superintendent of Banks, praying that the defendants set forth their several titles and interplead, settle and adjust their demands between themselves. The defendant, Martin Burkhart, answered, setting forth that individually and as administrator of the estate of Frank Burkhart, deceased, he was the owner of the whole fund. The other defendants filed a joint answer in which they alleged their ownership not only of one-half of the fund but also of one-half of all property both real and personal of which Frank Burkhart died seized or possessed.

These allegations were put in issue by a reply filed thereto by Martin Burkhart and, upon the trial of the cause, a decree was entered in his favor, from which the other defendants have appealed.

The respective rights and claims of the parties to the fund and property referred to grow out of the following facts: In April, 1912, Mary and Frank Burkhart intermarried and up to the time of her death they continued living together as husband and wife. At the time of the marriage they were well advanced in years and no issue resulted from the marriage. She, however, had six children living by a former marriage

while he had no children and his heirs consisted of two brothers and a sister only, all of whom are now living and one of whom is the defendant, Martin Burkhart. Mary and Frank Burkhart, at the time of their marriage, had money and property about equal in value and of the value of some three or four thousand dollars each. They put their said money and property into a common fund and with it they purchased, in their joint names, a small tract of land near Jefferson, in Linn county, upon which they resided during the remainder of their lives. The remainder of their joint money they deposited in their joint names in the Oregon State Bank at Jefferson, which bank later became insolvent and its business and assets were taken over for liquidation by the State Superintendent of Banks. The money brought into court is the balance of dividends declared on said account by the Superitendent of Banks after completely liquidating the affairs of the bank, for which a certificate was issued to Frank Burkhart, Mary Burkhart being dead. This certificate was assigned to Martin Burkhart by Frank Burkhart a day or two before his death.

On June 23, 1920, Mary Burkhart and Frank Burkhart each executed a separate will containing reciprocal provisions. Each directed that the debts and funeral expenses of the testator should be paid and each named the other spouse as executor or executrix of the will. The other provisions of the two wills are identical in terms except in the change of the name of the testator and in the names of the heirs of the testator. Mrs. Burkhart's will provides:

"That my husband, Frank Burkhart, shall at my death have full and complete possession of all I own, of everything, of all property both real and personal,

of all moneys, bonds, chattels or any other securities whatsoever, and shall have and hold the same unto his death.

"Third. At the death of my husband, Frank Burkhart, the (½) one-half of all in his possession at that time of all property real or personal of all moneys, bonds, chattels or any other securities whatsoever shall immediately pass to children and daughter in law as follows: To Naoma Jackson, Cora Fellows, Roxie Ingram, Eldridge Ingram, Ed Ingram and Bertha Williams, share and share alike."

Under Mr. Burkhart's will, Mary Burkhart's possession was to be the same in case she survived him and, upon her death, one-half of all property in her possession was to pass to his sister, Mary Dickison, and his brothers, Robert Burkhart and Mark Burkhart, who were to share and share alike. The person named as Mark Burkhart in the will and the respondent herein, Martin Burkhart, are one and the same person.

It will be observed from a mere reading of the wills that neither testator made an absolute gift of property to the survivor. Each gave to the survivor possession of the property and the right to use and enjoy the same during the remainder of his or her natural life, and then directed that, upon the survivor's death, one-half of all the property of which the survivor died possessed should immediately pass to the heirs of the testator making the will. These wills contained reciprocal provisions and are reciprocal or mutual wills. They show a clear intention upon the part of both testators that there was to be no division of the joint property made to the heirs of either of the testators until both of the testators were dead and that at that time the joint property of the testators was to be

divided equally beween the heirs of both. If such was not the intention, then an intestacy would arise as to the survivor's one-half interest in the joint property. The difficulty in construing these wills grows out of the fact that each testator drew his will upon the theory that he or she would be the first to die and was attempting to provide that, upon the death of the other, one-half of all property then possessed by the other should immediately pass to the testator's heirs. These wills were executed by the testators at the same time and place and were attested by the same witnesses, and obviously they were drawn by the same person. The reciprocal provisions contained in them show that they must have been prepared and executed by the two spouses pursuant to an understanding and agreement entered into by them and for the purpose of making an equal distribution between their respective heirs of their joint property. It is impossible that either Burkhart or his wife was not informed of the fact that each was making a will and that the provisions of the two wills were identical in terms. The fact that these wills were evidence of a mutual compact is afforded by what the parties did in making them and the fact that they made such will is satisfactory proof that they were made under a mutual compact to dispose of their joint property in the manner they provided for: *Frazier v. Patterson,* 243 Ill. 80 (90 N. E. 216, 27 L. R. A. (N. S.) 508, 17 Ann. Cas. 1003); *Holman v. Lutz,* 132 Or. 185, 204 (282 P. 241, 284 P. 825).

■ Mary Burkhart predeceased her husband and, under the provisions of her will, he succeeded to the possession and enjoyment of her entire interest in their joint property. That it was their intention that, upon the death of the survivor, the property was to be equally divided between the heirs of both testators is

proven by the oral declarations made by Mrs. Burkhart in her lifetime and by the oral declarations made by Burkhart after his wife's death. The fact that he made such declarations on numerous occasions and up to shortly before his death is amply proven by the evidence. Evidence of such declarations was admissible: *Holman v. Lutz,* supra.

There is no evidence in the case that either testator during the lifetime of both ever attempted to revoke either of said wills or that Burkhart ever attempted to repudiate the contract with the exception of the assignment made by him to his brother of his claim against the bank, and this, the evidence shows, occurred while he was seriously ill and but a few days before his death.

■■ It is an established rule that equity will not allow one person to receive advantage under a contract and then refuse to perform his part of the agreement, and that where mutual wills are the result of a contract between the parties making them, which could not be rescinded without the consent of both, and one of them has died and his part of the contract has been carried into execution, equity will not permit the other to violate the agreement but will enforce the contract by declaring the executor, devisee or other person coming into possession of the property which was the subject of the contract to be trustee for those who would have been benefited had the contract been performed: *Kelley v. Devin,* 65 Or. 211 (132 P. 535); *Woods v. Dunn,* 81 Or. 471 (159 P. 1158); *Stevens v. Myers,* 91 Or. 114 (177 P. 37, 2 A. L. R. 1156); *Popejoy v. Boynton,* 112, Or. 646 (229 P. 370, 230 P. 1016); *Holder v. Harris,* 121 Or. 432 (253 P. 869); *Traver v. Naylor,* 126 Or. 193

(268 P. 75); *Stephens v. Tipton,* 128 Or. 115 (268 P. 1014); *Deseumeur v. Rondel,* 76 N. J. Eq. 3941 (74 Atl. 703); 1 Alexander on Wills, sections 88 and 89.

■ It is contended on behalf of the respondent Burkhart that the evidence showing that mutual or reciprocal wills are based upon a compact must be clear, satisfactory and convincing and that the agreement itself must be certain and definite in its terms and that it must be supported by a sufficient consideration. While conceding the correctness of the rules referred to, we hold that in the instant case the evidence that there was such a compact and that the wills were made pursuant thereto and in compliance therewith is clear, satisfactory and convincing. It is clear under the evidence that Mrs. Burkhart did not intend to give her property to the brothers and sister of her husband to the exclusion of her own children. The language of the wills shows that both parties intended that the survivor, whoever it might be, should have the use and enjoyment of the joint property so long as he or she might live and that then the interest of each in such property should pass to the heirs of each. Both knew, because of the uncertainties of life, that this could not be accomplished except by some compact to be entered into and carried out by the parties and the wills were made in fulfillment of that contract. There is no analogy between this case and that of *Sappingfield v. King,* 49 Or. 102 (89 P. 142, 90 P. 150, 8 L. R. A. (N. S.) 1066), upon which respondent relies and nothing said in that case is questioned in this. The wills involved in the instant case are in themselves evidence of a contract and, since this contract has been executed by one of the parties and the other has received the benefit of its execution, the contract has become irrevocable and it is the duty of the court to enforce the

contract as against the party who has received the benefit of its fulfillment and now attempts to violate it upon his part and thereby perpetrate a fraud upon the heirs of the party fulfilling the contract.

■ Respondent also contends that the contract is unenforceable because within the statute of frauds. While it is true that oral agreements to devise property are void unless there is such part performance as will take the case out of the statute of frauds, in this case there has been such part performance that the case is now beyond the bar of the statute. It is established law that if two parties verbally agree, each in considera-tion of the other doing likewise, to make their wills disposing of their property in a specified manner and one dies leaving a will which complies with the con-tract and the survivor accepts benefits under the will, non-compliance with the agreement by the survivor would operate as a fraud which a court of equity will prevent. In such case the acts done by the other in compliance with the agreement is such a part per-formance as would take the case out of the statute of frauds and equity will compel the fulfillment of the contract: In re *Burke's Estate,* 66 Or. 252 (134 P. 11). This rule of law is so well settled that further citation is unnecessary.

It appears from the pleadings and proof that at the time of the death of Frank Burkhart he was the owner and in possession of two tracts of land in Linn county, Oregon, a more particular description of which is to be found in the answer and cross-complaint filed by the respondent herein. It was stipulated on the trial that, although this suit was brought and tried in Marion county and the lands are situate in another county, no objection upon that ground would be urged by any of the parties, and the court was requested to

pass upon the rights of the parties to both of said tracts of land with the same power and effect as if the lands were in Marion county, the county where the trial was had. Under the contract between the parties, appellants have the same right, title and interest to an undivided one-half of said lands as they have to one-half of the fund in controversy.

The question of whether the will of Frank Burkhart, who was the surviving spouse, was sufficient to devise his interest in the property in controversy to his two brothers and sister is a question upon which we express no opinion. It does not in any way affect the rights of the parties and it would seem to be of no importance even to the respondent, since so far as the evidence discloses the sole heirs-at-law of Frank Burkhart, deceased, are the two brothers and sister named in the pleadings; whether they take by descent or by will is not material to any question raised here. .

■ The principal contention made at the argument grew out of the fact that the devisees under the will of Mary Burkhart, in their complaint, prayed that the two wills be reformed upon the ground that both devisors, in executing them, were acting under a mutual mistake and because of this appellants contended that the will should be reformed. Courts of equity have the power to construe wills in order that the intention of the testator as disclosed by his will may be given effect but they have no power to reform wills. The relief granted by this decision is based upon the principle stated by a distinguished author in these words:

"Where two parties have made mutual wills in favor of each other, whether pursuant to a valid agreement or not, if the survivor receives benefits under the will of the other who has died without having revoked the same and under the belief that the will of the sur-

vivor would not be altered, the revocation by the survivor of his will would be such a fraud as equity would prevent. Such wills are in effect the separate will of each maker and the right of revocation is undisputed except in those cases where it would be a fraud against the estate of the decedent to allow the survivor to receive a benefit or advantage under the will of the one first dying and thereafter to make a different disposition of his property. Where mutual or reciprocal wills have been made pursuant to an agreement which has been executed by one of the testators dying without having made any different testamentary disposition of this property, and the other has accepted the benefits accruing to him under the will of the deceased, the agreement becomes obligatory upon the survivor and may be enforced in equity against his estate." 1 Alexander Comm. on Wills, § 88.

For the reasons given, the decree will be reversed and the cause will be remanded to the court below with directions to enter a decree awarding one-half of all said property to appellants and for such further proceedings as are not inconsistent herewith, and it is so ordered.

Bean, C. J., and Kelly, J., concur.

ROSSMAN, J. Based upon *Holman v. Lutz*, 132 Or. 185 (282 P. 241, 284 P. 825), I dissent.