Argued at Pendleton May 5; reversed June 10; rehearing granted
September 23, 1941; argued on rehearing May 5;
suit dismissed July 14, 1942

# ANKENY *v.* LIEUALLEN ET AL.

## (113 P. (2d) 1113, 127 P. (2d) 735)

Before KELLY, Chief Justice, and RAND, BAILEY and LUSK, Associate Justices.

*John F. Kilkenny*, of Pendleton (Raley, Kilkenny & Raley, of Pendleton, on the brief), for appellants.

*Homer I. Watts*, of Athena, and *George R. Lewis*, of Pendleton, for respondent.

RAND, J. This is an appeal from a decree foreclosing a mortgage on 320 acres of farm land in Umatilla county, Oregon. The mortgage was given on October 17, 1932, by James T. Lieuallen and his second wife to the First Inland National Bank of Pendleton. The plaintiff, as agent for the shareholders of the bank, was substituted for the receiver of the bank.

The one question is whether, under the terms of a contract entered into between Lieuallen and his deceased former wife and the mutual wills by them executed in pursuance of said contract, he had a lawful right to encumber this property with a mortgage. If he had no such power, then the lien of the mortgage against the land is invalid and unenforceable.

It is admitted that, on June 10, 1918, James T. Lieuallen and Lucy I. Lieuallen, his former wife who has since died and whose will has been probated and

whose estate he has since received, entered into the following contract in writing:

"We, James T. Lieuallen and Lucy I. Lieuallen, husband and wife, hereby agree as follows:

"That we will make and execute with due and legal formalities a joint will to our property, willing all the real and personal property to each other during the lifetime of the survivor, and will nominate the survivor as the executor or executrix of the said will without requiring bonds; that the survivor shall have the sole and exclusive handling of the property and each and every part thereof, but will not be empowered to sell any of the farm lands, but will be allowed and empowered to sell all personal property of every kind or nature, the lands belonging to the estate known as the 'Mountain Land' and any city property which may be owned by each of us at the time of the death of one of us. The survivor is to have all of the rents, issues and profits of the farm lands and to use the same as he or she may dictate. We, however, jointly suggest that the overplus over a sufficient amount to reasonably maintain the survivor, be converted into farm property or loaned upon farm security.

"In the event of the purchase of any additional farm lands out of the proceeds of the sale of the Mountain Land or the personal property, or the rents, issues and profits, the same shall be kept as intact as the present farm lands. After the death of the survivor of us, and at the time of the youngest child arriving at the age of majority, the land shall be divided share and share alike among our children, Lawrence L. Lieuallen, Fred A. Lieuallen, Stella Lieuallen, James T. Lieuallen, Jr., Ethel Bayne, Lucy I. Woodward, Ravella L. Lieuallen, Paul Lieuallen and Francis C. Lieuallen; the sons and daughters shall be allowed to select and occupy parts of the lands as a home, but they shall never be allowed under the will to sell, mortgage, hypothecate or encumber any of the lands during their lifetime. The land shall be ap-

portioned by choice, with the first choice to the youngest child and the other choices following in the order of their seniority.  In the event of the death of any of the children, leaving issue of his or her body prior to our death, the share which would go to the parent shall be governed so far as the selling, encumbering or otherwise disposing of the same by the same rule as the other children, that is, the grandchildren during their lifetime will not be allowed to sell, hypothecate, or encumber the property, and in the event of the children not being able to divide the farm lands amicably they shall select three disinterested persons who shall make a distribution of the lands, which shall then be subject to choice in the manner provided herein.  The lands which are occupied by each child shall be under the exclusive charge and jurisdiction of that child and he or she shall in no event be required to account for any use, occupancy or rents, issues and profits of the premises.

"The land at the time of the death of the children, except in the event of the death of a child prior to our death, shall vest in fee simple in the grandchildren. In the event of the trust not being fully completed on the death of the survivor of us the two eldest children are hereby nominated as trustees to complete the administration, without requiring bonds for security for the discharge of their trust, and it being our desire that no compensation for such service be paid other than necessary Court costs and attorney fees.

"It is understood that nothing herein shall prevent mutually the making of a new will or the making of a new agreement, either or both, but our said wills may under no circumstances be changed or altered after the death of one of us.

"IN WITNESS WHEREOF we have hereunto set our hands and seals this 10th day of May, 1918.

|  |  |
|---|---|
|  | J. T. Lieuallen (SEAL) |
| Witnesses: | Lucy I. Lieuallen (SEAL) |
| C. M. Comstock |  |
| J. G. Thomas." |  |

It is also admitted that, on the same day, in conformity with said contract, both Mr. and Mrs. Lieuallen executed a mutual or reciprocal will, each containing the same identical terms as those contained in the other with the sole exception that the names of the parties were transposed and the words "husband" and "wife" were substituted for each other wherever the same was proper. Mrs. Lieuallen's will reads as follows:

"KNOW ALL MEN BY THESE PRESENTS: That I, Lucy I. Lieuallen, now of Walla Walla, Washington, but lately of Umatilla County, Oregon, being of sound mind and memory and not suffering under duress, menace, fraud or undue influence of any person or persons whatsoever, and judging it best to make, hereby do make this my last will and testament:

"It is my will that my debts and that the charges of my funeral be paid as soon as conveniently may be after my decease, and I leave the charge of my funeral to the direction of my family.

"Having heretofore made an agreement with my husband, James T. Lieuallen, as to the disposition of our community property, now in confirmation of such agreement I give and devise all of my estate, real and personal, in the following manner, to-wit:

"All of my property, real, personal, or mixed of whatever the same may consist or wherever the same may be found, I give, devise and bequeath to my beloved husband, James T. Lieuallen, to have and to hold the same during the term of his natural life, giving and granting unto my said husband the sole and exclusive handling of the property and each and every part thereof, but not empowering my said husband to sell any of the agricultural property of which we are possessed at all times, however, giving and granting to my said husband the right to sell any or all personal property of every kind or nature, and also to sell that part of our estate known as the

'Mountain Land' and which land is not agricultural property, and also to sell any city property or town lots which may be owned by me or by us at the time of my death. My said husband shall have all of the rents, issues and profits of the farm lands and shall have the right to use the same as he may desire. I, however, strongly recommend and suggest that all overplus over a sufficient amount reasonably necessary to maintain my said husband and such of our family as reside with him be converted into farm property or loaned upon the security of mortgage upon agricultural property, and in the event that additional farm lands shall be purchased out of the proceeds of the mountain land or personal property, or from the rents, issues, and profits, I desire that the same shall be kept as intact as the present farm lands.

"After the death of my husband, provided that at such time our youngest child shall have arrived at the age of majority, I direct that the real estate in which I and my husband are interested shall be divided share and share alike among our children, to-wit: an undivided one-ninth (1-9) to each of the following named sons and daughters: Lawrence L. Lieuallen, Fred A. Lieuallen, Stella Lieuallen, James T. Lieuallen, Jr., Ethel Bayne, Lucy I. Woodward, Ravella L. Lieuallen, Paul Lieuallen and Francis C. Lieuallen.

"It is my direction that with the consent of my said husband and by mutual agreement that our sons and daughters shall each be allowed to select and occupy parts of the farm lands as a home; provided, however, that it is not the intention of this indenture, nor is it my will that any of our said children shall be allowed or permitted to sell, mortgage, hypothecate or encumber any of the lands during their lifetime, and in the apportionment of lands to each of our children, it is my desire that the land shall be divided into parcels of the same value as near as may be, this apportionment to be made either by mutual agreement among the heirs, or in case of inability among the heirs the portioning of said land to be performed by three disin-

terested parties appointed by the Court having jurisdiction of my estate, and then after said lands shall have been parcelled I direct that the youngest child shall have first choice as to the parcel he or she may desire, and thereupon each of the children in the order of their seniority shall be entitled to choose one of the parcels so measured out and herein provided for. In the event of any of said children dying and leaving issue of his or her body prior to our death, the share which would go to the parent shall be governed so far as to the selling, encumbering or otherwise disposing of the same by the same rule as to the other children; that is, such grandchildren during their lifetime shall not be allowed to sell, hypothecate or encumber the property. The lands when selected by each of our said children are to be occupied by such child and shall be under the exclusive charge and jurisdiction of that child after the death of my said husband, and he or she shall in no event be required to account to anyone for the use, occupancy, or rents, issues or profits of the same.

"Upon the death of the children or any thereof, save and except in the event of the death of one or more of said children prior to the time of the death of my husband, the land so selected for said child or grandchild shall vest in fee simple in the children of said child or grandchild. In the event the trust herein provided for shall not have been fully completed at the time of the death of my husband, I hereby designate and appoint the two eldest of our children as trustees to complete the administration without requiring bonds or other security for the discharge of their trust, it being my desire that no compensation for such service be paid other than the necessary Court costs and attorneys' fees for attending to such matters.

"I hereby nominate and appoint as executor of this my last will and testament my husband, James T. Lieuallen, or in case my said husband shall die prior to the time of my death I nominate and appoint as executors or as executrix and executor the two eldest of

our children hereinabove named, and request and desire that so far as can be permitted under the law that the Court require no bond or other security for the faithful performance of the duties of my said executrix or of my executors herein designated.

"I solemnly acknowledge that this will is made under an understanding with my husband and that under no circumstances can it be changed or altered after his death.

"IN WITNESS WHEREOF I have hereunto set my hand and seal this 10th day of June, 1918.

Lucy I. Lieuallen (SEAL).''

It is also admitted that neither of these wills was ever revoked nor was the contract ever abrogated or any of its terms ever modified or changed in any respect.

Mrs. Lieuallen, the first wife, died on July 15, 1927. She was the owner at that time of 160 acres of farm land in Umatilla county. Her will was duly probated by Mr. Lieuallen and, as soon as his wife's estate was settled, he entered into possession of the said 160 acres of land and, until his death in November, 1939, he received all the rents, issues and profits thereof which amounted, it appears, to some eight or nine hundred dollars per annum.

That these wills were executed in pursuance of said written contract and were mutual wills containing reciprocal obligations and that each was a consideration for the other is clear. It is also clear, as above stated, that neither the husband nor wife, during their joint lives ever withdrew from the compact or revoked either of the wills thus made.

It also appears from the testimony that the 320 acres of land covered by the mortgage sought to be foreclosed herein are a part of the farm lands which

were owned by Mr. Lieuallen at the time the contract was entered into and were a part of the lands referred to and devised by him in his will.

■ It is also clear from the testimony that, in probating Mrs. Lieuallen's will, not only the will itself but a copy of the contract, in pursuance of which the will was made, was offered and made a part of the record in the probating of the will and was duly recorded as a part of the probate proceedings thereof then had and taken in the county court for Umatilla county. Whether such recording of the contract was constructive notice of its contents to the mortgagee bank and of the fact that it was executed pursuant to said contract is a question upon which we express no opinion for it clearly appears from the evidence that, in accepting the mortgage in question here, the officers of the bank had full notice and knowledge of the contents of the contract and of the fact that the will had been executed in pursuance thereof.

"* * * A mutual will, or, strictly speaking, a reciprocal will, is one by which each testator makes a testamentary disposition in favor of the other. Such a will is unquestionably valid and is entitled to probate upon the death of either party."

30 Am. & Eng. Ency. of Law, 2 ed., p. 556.

■ It is well settled by the decisions of this court and by the authorities generally, both in this country and in England, that a husband and wife, or any two persons, may contract with each other to make mutual wills containing reciprocal provisions, and that, when such wills have been executed in pursuance of a contract, either party may, during the lifetime of both, withdraw from the compact and revoke the will as to him upon giving such notice to the other as will enable

him to alter or revoke his will also if he so desires but, in the absence of such notice and revocation, the will becomes irrevocable after the death of one of them if the survivor takes advantage of the provisions made by the other. See Theobald on Wills, 7 ed., p. 16, and authorities there cited. See also *Dufour v. Pariera,* 1 Dick. 419; Schouler on Wills, pp. 454 and 456; Jarmon on Wills, p. 27; Underhill on the Law of Wills, p. 20; 2 Story's Eq. Jur., section 785; *Frazier v. Patterson,* 243 Ill. 80, 90 N. E. 216, 27 L. R. A. (N. S.) 508, 17 Ann. Cas. 1003; *Larrabee v. Porter,* (Tex.) 166 SW. 395; *Underwood v. Myer,* 107 W. Va. 57, 146 S. E. 896, and the authorities cited in each of said cases.

Referring to the case of *Frazier v. Patterson,* supra, the court, in *Larrabee v. Porter,* supra, said:

"In Frazier v. Patterson, supra, where husband and wife made a joint and mutual will, devising a life estate in their property to the survivor, with remainder to their daughter during her natural life and after her death to her children; and after the death of the husband the will was filed by the survivor for probate, which was granted, and she entered upon and took possession of said estate, using and enjoying the benefits thereof, to the exclusion of the heirs of the husband until the date of her death, her daughter having died prior thereto, it was held that she could not make different disposition of the property by a subsequent will attempting to revoke the first one; the court, among other things, saying: 'Mutual wills—that is, where two persons execute will reciprocal in their provisions but separate instruments—may or may not be revocable at the pleasure of either party, according to the circumstances and understanding upon which they were executed. To deprive either party of the right to revoke such mutual will it is necessary to prove, by clear and satisfactory evidence, that such wills were executed in pursuance of a contract or a compact between the parties, and that each is a con-

sideration for the other; and, even in cases where mutual wills have been executed in pursuance to a compact or agreement between the parties, the law appears to be well settled that either party may, during the lifetime of both, withdraw from the compact and revoke the will as to him. A joint and mutual will is revocable during the joint lives by either party, so far as relates to his own disposition, upon giving notice to the other; but it becomes irrevocable after death of one of them if the survivor takes advantage of the provisions made by the other'—citing authorities. 'When mutual or joint wills first came up for consideration, the courts of England, both common-law and spiritual, pronounced against them, and the same unfavorable position was taken by some of the earlier American cases; but the later and better opinions in both countries now sustain such wills where they have been executed with the necessary formality and have not been revoked by some instrument. Schouler on Wills, 456, and cases there cited. The leading case in England on this subject is Dufour v. Pariera, supra. In that case it was held that a joint and mutual will might be revoked by both jointly, or that it might be revoked separately, provided the party intending it had given notice to the other of such revocation, but that neither of them could during their joint lives, revoke it secretly, nor could it be done by the survivor after the death of the other; that such wills constituted a mutual contract between the parties which could not be rescinded by the survivor after the death of one, on the theory that the first that dies carries his part of the contract into execution. In such case the courts will not permit the other party to afterwards break the contract. The doctrine of this case has been approved in a number of well-considered cases in this country. Allen v. Boomer, 82 Wis. 364; 52 N. W. 426; Edson v. Parsons, 155 N. Y. 555, 50 N. E. 265; Carmichael v. Carmichael, 72 Mich. 76, 40 N. W. 173, 1 L. R. A. 596, 16 Am. St. Rep. 528; Bower v. Daniel, 198 Mo. 289, 95 S. W. 347.' "

In *Allen v. Ross*, 199 Wis. 162, 225 N. W. 831, 64 A. L. R. 180, the court said:

"When two persons enter into an agreement to make, and do actually make, mutual and reciprocal wills by which each bequeaths her estate to the other, if she survives, and the survivor takes under such a will, and accepts the benefit of such a mutual will, and accepts the benefit of such a mutual agreement, equity will take such action as may be necessary to give effect to the mutual agreement that the property of the survivor shall go to the person designated by such agreement. Doyle v. Fischer, 183 Wis. 599, 605, 198 N. W. 763, 33 A. L. R. 733.

"If it be necessary in order to give effect to such agreement, equity will impress the property of the survivor with a trust in favor of the person who is entitled to the property under such mutual agreement."

■ Referring now to our own decisions, this court, speaking through Mr. Chief Justice McBride, in *In re Burke's Estate*, 66 Or. 252, 134 P. 11, after holding that the contestants in a will contest cannot try out the question of whether the wills were mutual and based upon an agreement that the survivor should leave his or her property to a particular person, said:

" * * * Such an agreement is valid if performed by the making of such wills and the acceptance by the surviving party of the fruits of the agreement, but it is valid only as a contract, the performance of which by one party and acceptance by the other has taken it out of the statute of frauds: 40 Cyc. 2117, 2118."

The doctrine that where, pursuant to a contract, a husband and wife, or any two persons, make mutual or reciprocal wills, each making a testamentary disposition in favor of the other, the making of one being a consideration for the making of the other, the wills

are valid and, unless revoked during their joint lives, the will of the survivor becomes irrevocable after the death of the other if the survivor takes advantage of the provisions made by the other, and that the courts will not permit the survivor, if the rights of any third party would be injuriously affected thereby, to violate the mutual agreement, is well established by the following decisions of this court: *Stevens v. Myers*, 91 Or. 114, 177 P. 37, 2 A. L. R. 1155; *Schramm v. Burkhart*, 137 Or. 208, 2 P. (2d) 14; *Tate v. Emery*, 139 Or. 214, 9 P. (2d) 136; *Taylor v. Wait*, 140 Or. 680, 14 P. (2d) 283; *Lay v. Proctor*, 147 Or. 545, 34 P. (2d) 331; *Cooke v. King*, 154 Or. 261, 61 P. (2d) 429, 107 A. L. R. 881.

As above stated, the farm land which Lieuallen mortgaged to the bank was separately owned by him at the time this contract was entered into and these mutual wills were executed but it was a part of the farm lands referred to in each of said instruments. By their wills, the husband and wife each devised a life estate in all their farm lands to the survivor with remainder to their children during their natural lives and, after their death, to the grandchildren of the testator and testatrix. By making this agreement and in executing these wills, the husband and wife each agreed that whoever should become the survivor would take a life estate only in his or her farm lands to the exclusion of their children and that the rights of the survivor in his or her farm lands should likewise be reduced to that of an estate for life only with remainder over to the children and grandchildren as in the case of the one dying first.

This was the rule applied in *Moore v. Moore* (Tex.) 198 S. W. 659, 661, and we think is the rule which should

be applied here since it carries out the plainly expressed and obvious intention of the parties.

■ Hence, under the decisions above cited and since neither party during their joint lives withdrew from the compact or revoked his or her will and the wife having died and the husband having probated her will and having received the benefits conferred by the will, which thereby carried her part of the contract into execution, he was not permitted to break the contract or to dispose of his lands contrary to the terms of their mutual agreement.

■ The bank calls attention to the fact that, since the contract expressly provides that "the survivor shall have the sole and exclusive handling of the property and each and every part thereof, but will not be empowered to sell any of the farm lands", and also expressly provides that "the sons and daughters shall be allowed to select and occupy parts of the lands as a home, but they shall never be allowed under the will to sell, mortgage, hypothecate or encumber any of the lands during their lifetime", it evidences an intention to impose upon the husband a less limitation than that imposed upon the sons and daughters and, hence, that Lieuallen was empowered to mortgage the lands although not permitted to sell them.

It would be idle to impose a limitation upon the power of the holder of a life estate in lands to sell the same and at the same time permit him to mortgage them for more than the lands were worth and thereby do indirectly what he was not permitted to do directly. He could, of course, mortgage his life estate but the plain intention of these parties was that he should not dispose of the property in any way which would destroy the rights of the remaindermen.

A note in 108 A. L. R., at page 868, says:

"* * * Assuming the validity of the contract, the question becomes one primarily as to the intention of the parties. Did they intend by the agreement, and the joint or mutual will executed pursuant thereto, to impose a limitation upon their right, or that of the survivor, to dispose of the property during life, or was the intention merely that ownership and control should remain unaffected thereby during their lifetimes, and that property remaining at their deaths should pass in a designated way?"

In the same note the annotators say that, for the purpose of the annotation, the mortgaging of property is deemed a disposition of it.

Under this rule it seems clear from the provisions contained in this contract and in these wills that the parties did not intend that only the property remaining upon the death of the survivor should pass to the remaindermen but rather that, after the death of one, the survivor should have no right to dispose of the property during his or her lifetime, and that all the farm lands owned by either of them should pass to the remaindermen upon the death of the survivor. The mortgaged land was expressly mentioned and referred to in all these instruments and it seems to be clear that the parties intended that the whole, and not what should remain upon the death of the survivor, should pass to the remaindermen. In this connection it should be noted that the contract expressly provides: "It is understood that nothing herein shall prevent mutually the making of a new will or the making of a new agreement, either or both, but our said wills may under no circumstances be changed or altered after the death of one of us", and, in the will executed by J. T. Lieual-

len, he made the following declaration: "I solemnly acknowledge that this will is made under an understanding with my wife and that under no circumstances can it be changed or altered after her death."

In *Baker v. Syfritt*, 147 Iowa 49, 125 N. W. 998, the court said:

"Where one maker of such will dies before a revocation thereof by either, and the survivor accepts any benefit thereunder, we think it quite clear that he can no longer revoke, and that any attempt by him to divert the common estate in any other direction than is indicated by the common or joint devise is nugatory."

Hence, we are compelled to hold that J. T. Lieuallen, at the time he executed this mortgage, had no right or authority to mortgage any interest in the lands except his life estate therein and that, upon his death, the mortgage, so far as it was a lien upon the lands, ceased to exist.

For these reasons, the decree appealed from must be set aside and reversed.

---

Argued on rehearing May 5; suit dismissed July 14, 1942

ON REHEARING
(127 P. (2d) 735)

Before KELLY, Chief Justice, and BAILEY, LUSK, RAND, and BRAND, Associate Justices.

RAND, J. Since our former decision was rendered in this case, a rehearing was granted on petition of the plaintiff. It now appears from the records and files of the case that the mortgage sought to be foreclosed by the plaintiff in this case has been purchased by some

of the defendant-mortgagors, who have moved the court that they be substituted as parties plaintiff in lieu of the original plaintiff and be permitted to continue the proceedings against the other defendant-mortgagors, in order to have the mortgage foreclosed and the mortgaged property sold to satisfy the mortgage debt.

■ Section 1-311, O. C. L. A., provides that no action shall abate by the transfer of any interest therein, if the cause of action survive or continue. Under this statute, as construed by this court, the plaintiff, in an action or suit, may transfer his interest *pendente lite* and the transferee may continue the action in the name of the original plaintiff. See *Burns v. Kennedy*, 49 Or. 588, 90 P. 1102, and cases there cited. See also *Oregon Auto-Dispatch v. Cadwell*, 67 Or. 301, 135 P. 880; *Smith v. Cram*, 113 Or. 313, 230 P. 812; and *Phegley v. Swender Co.*, 133 Or. 146, 289 P. 500. In the case last cited, the court said: ''Notwithstanding the transfer of plaintiff's interests, the cause of suit survived and there was no reason for substitution; in fact, none could be made.'' Hence, under this statute, if there were no facts which take the case out of the operation of the statute, the transferees of this mortgage would be entitled to have the case proceed in the name of the original plaintiff.

■ However, in mortgage foreclosure cases, all the mortgagors, if living, or, if dead, their personal representatives, are proper and necessary parties defendant and, if not made defendants, their individual interests in the mortgaged property would not be affected by the foreclosure. Since the mortgage in question here created a lien upon lands in which all the defendants in the original action had an interest, each and all of

the original defendants were not only proper but necessary parties defendant in the foreclosure proceedings.

■ It goes without saying that one and the same individual cannot be both plaintiff and defendant at the same stage of proceedings in any action or suit and, if substitution should be granted in this case, as requested by the mortgage-purchasing defendants, the remaining defendants would be deprived of a substantial right in that the mortgage as a whole could not be foreclosed and no proper decree could be granted in the case should the mortgage be found to be valid and enforceable.

■ Moreover, the pleadings in this case would not justify such a result for the answer of all the defendants alleged that the mortgage was invalid and unenforceable and, in the absence of some explanation therefor, the defendants now seeking substitution would be estopped to assert that the mortgage is now valid and enforceable as against their codefendants. If, as asserted, the moving defendants have purchased the mortgage, then the mortgage is paid and should be discharged of record and all that the purchasing defendants would be entitled to recover would be the amount which the court should find they were entitled to have contributed to them by the non-purchasing defendants. This remedy would be available in another suit brought for the purpose of compelling the non-purchasing defendants to contribute their proportional part of the amount paid in the purchase of the mortgage, if the same is found to be valid and enforceable.

For these reasons, there is nothing left for this court to do except to dismiss the suit.