Argued December 1, 1975, affirmed February 12, 1976

# AMERICAN NATIONAL RED CROSS
## et al, *Appellants,*
### *v.*
# WILSON et al, *Respondents.*

545 P2d 883

*Denny Z. Zikes,* of Hedrick, Fellows, McCarthy, Zikes & Dahn, P.C., Portland, argued the cause for appellant American National Red Cross. *Richard E. Paul,* Portland, argued the cause for appellant United States National Bank. With them on the briefs were McCarty, Swindells & Nelson, Portland.

*Gerald R. Pullen,* Portland, argued the cause for respondents. With him on the brief were Thomas P. Joseph, Jr., and McMenamin, Joseph & Herrell, Portland.

HOWELL, J.

**HOWELL, J.**

This is a suit in equity for specific performance of an oral contract allegedly made in connection with the execution of reciprocal or mutual wills disposing of the respective estates of two elderly sisters. The issue on this appeal is whether the two sisters made a binding agreement to dispose of their respective estates in accordance with the terms of their mutual wills.

The facts are generally undisputed.

On July 11, 1962, Percy Watkins and her sister, Agnes Croft, executed mutual wills wherein they devised their entire estates to each other, with the American Red Cross as the sole residuary beneficiary of their respective estates in the event of the death of the primary beneficiary before the death of the testatrix.

In 1965 Agnes Croft became physically and mentally incapacitated and remained completely so until her death on December 22, 1971.

In May, 1969, the other sister, Percy Watkins, executed a new will leaving her entire estate to her two nieces. Percy died on December 20, 1971, two days before the death of her sister.

Plaintiff American National Red Cross, the residuary beneficiary of the original wills, and plaintiff United States National Bank, the executor of both wills, filed this suit for specific performance. The complaint alleged that the sisters' wills of July, 1962, were reciprocal wills, that "on or about that time" the sisters entered into an agreement not to change the wills, and that Percy breached the agreement by executing a new will in May, 1969.

The trial court found that the two sisters did have "some understanding between them," but the court concluded that there was no evidence that this understanding amounted to "a contract between them that would bind them in the future." We agree.

[ 239 ]

■■ Plaintiffs have the burden of proving the existence of a legally binding agreement to dispose of the property in accordance with the terms of the 1962 wills. Any such agreement must be established by clear and convincing evidence. *Taylor v. Wait,* 140 Or 680, 14 P2d 283 (1932); *Stevens v. Myers,* 91 Or 114, 177 P 37, 2 ALR 1155 (1919).

In *Taylor v. Wait, supra,* we held that the mere fact that two parties had made mutual and reciprocal wills did not establish that they were acting pursuant to any binding agreement to do so. *See also Patecky v. Friend et al,* 220 Or 612, 350 P2d 170 (1960). This is in accord with the weight of authority and with sound logic. The following passage from one of the leading texts on this subject illustrates the point:

> "The fact that joint wills and mutual wills are usually executed as the result of a common intention does not in any way mean that they are always executed pursuant to a contract between the parties respecting the making of such wills. Though it is true that in many cases the joint will or the mutual wills are made as the result of a contract to make reciprocal wills, there are undoubtedly an equal number of cases in which the common intention does not proceed anywhere near to the point where arms length promises are exchanged, consideration exists, and a contract emerges. It is more logical to expect that in many settings, particularly that of husband and wife, the reciprocity or similarity in the dispositive provisions of the two wills results from similar tastes and affections that have resulted from years of living together, and the making of identical or similar wills was a spontaneous thing unaccompainied by even so much as a thought on the part of either husband or wife that they should enter into a contract with each other. The sole fact, standing alone, that two wills were executed at or near the same time and bear similar provisions should in no way give rise to a presumption or an inference that they were made pursuant to a contract." 1 Bowe-Parker: Page on Wills 554, § 11.1 (rev ed 1960). (Footnotes omitted.)

■■ In the instant case there was evidence that the two sisters purchased two annuities, one for each of the

two nieces, prior to the execution of the 1962 wills. They so informed their attorney at the time they executed their wills. At the attorney's suggestion, they advised the bank by letter why their relatives were not included as beneficiaries. At the same time the sisters' executed a deed to the nieces, conveying the sisters' home subject to a life estate. Mrs. Caldwell, the wife of the attorney who prepared the two wills and who was present at the discussion concerning the wills, also testified. She stated that her husband said, "This should be in writing; in permanent form, for a permanent contract." She testified:

"Q  In other words, you recall this permanent-type discussion, is what you remember, right?

"A  Yes, they seemed to be quite concerned whether someone might disagree with it, and they wanted to be sure that they had that established in everybody's mind."

We are inclined to agree with the trial court in its conclusion that the letter to the bank merely reflected "an attempt to memorialize the fact that these two ladies were not inadvertently excluding persons that might be considered the logical objects of their bounty." We do not feel that this evidence, or the testimony of Mrs. Caldwell, or any other evidence[1] which plaintiffs introduced is sufficient to compel an inference that the two sisters contemplated entering into a binding agreement with each other.

Significantly, the mutual wills which these ladies executed each stated that the testator was "not acting by reason of any contract or agreement with any person whomsoever." Although such language is not conclusive, the terms are clear, and we do not believe that plaintiff's evidence to the contrary is clear and convincing.

Affirmed.

---

[1] Plaintiffs also offered evidence from a nurse for the sisters that Percy told her in 1970 or 1971 that when she died her property would go to Agnes and Agnes' property to her. However, Percy was 90 or 91 years old at the time and the nurse described her as senile.