Argued December 20, 1978, affirmed and remanded
with instructions March 19, 1979

COOK, *Respondent,*
*v.*
WALSH, et al, *Appellants.*
(No. A7701 00241, CA 10847)
591 P2d 1201

Richard L. King, Portland, argued the cause and filed the brief for appellants.

John F. Cramer, Jr., Portland, argued the cause for respondent. With him on the brief was Cramer & Cromwell, Portland.

Before Schwab, Chief Judge, Richardson and Joseph, Judges, and Tongue, Judge Pro Tempore.

JOSEPH, J.

**JOSEPH, J.**

This suit arises from the joint and mutual wills of decedents Bessie and Harold Wurtz, who were married, and the agreement on which those wills were based. Plaintiff is the niece of Bessie Wurtz. Defendant Heston Walsh is the nephew of Harold Wurtz, and defendant Mary Walsh is his wife. Defendant Fred Wurtz is Harold's brother.

In 1972, when Bessie was 78 years old and Harold was 69, they entered into an agreement to execute wills so that their combined property would not go entirely to the heirs of the one who survived the other. They agreed that upon the death of either, the residue of his or her estate (after debts and funeral expenses) would pass to the survivor. On the death of the survivor, the residual estate (after debts, funeral expenses and a $2,000 bequest to Helen Jones, a friend) would be divided equally between certain of her relatives and certain of his.

A joint will was drawn and executed in accordance with the agreement in August, 1972. The third paragraph provided:

> "In the event that my spouse shall not be living at the time of my death, I give, devise and bequeath all the rest and residue of my estate to the following named persons, to-wit: $2,000.00 unto Helen Jones *** Fifty percent (50%) of the remainder of my estate unto Betty Jane Cook, niece of Bessie L. Wurtz *** and fifty percent (50%) of the remainder of my estate unto Mary Walsh, niece of Harold Wurtz ***."

The sixth paragraph provided:

> "I hereby certify and declare that this will has been executed in compliance with a solemn agreement between the testators that neither of us, after the death of the other, shall have any right to revoke this will so far as it relates to any and all bequests in favor of the relations of the blood of the other."

The testators took the original will. The attorney who drafted it kept a copy.

[359]

At the time the joint will was executed, the testators were living in a mobile home in Nehalem. In late 1973, they moved to a mobile home park in Beaverton. In January, 1976, when their health began to fail, they moved in with plaintiff. She quit her job to care for them. The mobile home was sold, and the proceeds were used to build an addition onto plaintiff's house so the Wurtzes could have a private room. With the exception of brief periods of hospitalization, both testators lived with plaintiff until their deaths. Bessie died on August 3, 1976; Harold died on November 20, 1976.

On May 26, 1976, plaintiff went to a bank with the testators, who then placed their personal papers, including the joint will, in a safety deposit box. Between that date and Bessie's death, only Harold opened the box, and he did so on several occasions. When the box was first opened after Bessie's death for the inventory, the will was not there. It was never found.

On August 18, approximately two weeks after Bessie died, Harold executed another will, which expressly revoked all prior wills and codicils. In the new will he bequeathed $2,000 to Helen Jones (the same as in the joint will), $5,000 to plaintiff and her husband, $400 to Fred Wurtz and the residue to Heston and Mary Walsh. After Harold's death, the August 18 will was admitted to probate. Mary and Heston Walsh were co-representatives under that will.

In January, 1977, plaintiff initiated this suit, seeking specific performance of the joint will. After trial, a decree was entered for plaintiff, granting the relief requested. Defendants appeal.

The basic legal principles applicable to joint and mutual wills and agreements to make such wills may be summarized. A joint will is a unitary testamentary instrument that constitutes the separate wills of each of the testators. *Florey v. Meeker*, 194 Or 257, 240 P2d

1177 (1952). Even if such wills are based on a contract under which each party's promise to make a particular disposition is exchanged for a similar promise by the other, each retains the right to revoke his *will,* before *or* after the death of the other. *Williams v. Chastain,* 221 Or 69, 350 P2d 430 (1960); *Florey v. Meeker, supra.* However, a party who revokes a joint will remains bound by the contract. *Williams v. Chastain, supra; Florey v. Meeker, supra.* If a suit is brought by a third party beneficiary of the contract, the justiciable question is whether the revocation constituted a breach of the contract. *Irwin v. First Nat'l Bank,* 212 Or 534, 321 P2d 299 (1958); *Florey v. Meeker, supra.* The general principles of law governing contracts for mutual wills are the same as those that apply to contracts in general *(Florey v. Meeker, supra),* and the will based on the contract is admissible as evidence of the terms of the contract.

■ Defendants raise two issues. First, they argue that Harold was not obligated to comply with the contract because Bessie's bequest of one-half of her residual estate to Mary Walsh, who was not a blood relative of Harold, constituted a material breach. As evidence of the purported requirement that each of the residual beneficiaries be a blood relative of Bessie or Harold, defendants point to paragraph six of the joint will, quoted above. That argument is not convincing. The agreement between the testators concerning the residual beneficiaries was clearly that which is reflected in paragraph three of the will which they jointly executed. Both agreed that "Mary Walsh, niece of Harold Wurtz" was to receive one-half of the residual estate of the survivor. That intention is also supported by the testimony of the attorney who drew the will after consulting with Bessie:

> "Yes, she told me that they had an agreement that after the death of one, all the property was to go 50 percent to his heir and 50 percent to her heir, *that is, her niece and his niece,* and she wanted the Will

[361]

prepared in accordance with that agreement." (Emphasis supplied.)

Defendants failed to establish any breach of the contract by Bessie.

■ Defendants next argue that prior to Bessie's death Harold revoked his will and that such a revocation was not in violation of the agreement. They contend that paragraph six of the will should be interpreted as permitting revocation by either party while both were living. To establish a revocation prior to Bessie's death, defendants rely on the principle that when a will cannot be found at the time of the testator's death and the testator was the last to have access to it, the testator is presumed to have destroyed the will with the intention of revoking it. *See Van Vlack v. Van Vlack*, 181 Or 646, 182 P2d 969, 185 P2d 575 (1947); *Fry v. Edwards*, 5 Or App 471, 484 P2d 322 (1971).

We may assume, for the sake of analysis, that that presumption applies to Harold's will as of the time of Bessie's death and that there was not sufficient evidence to overcome it. That is to say, we may assume that Harold did revoke his will by destruction prior to her death. Nevertheless, it does not follow that the contract was not breached by that revocation. The contractual provision for the right of either party to revoke his will while the other party is living does not imply a right to revoke without notifying the other party so that that party would have an opportunity to readjust his or her affairs in response. *See Ankeny v. Lieuallen*, 169 Or 206, 113 P2d 1113, 127 P2d 735 (1942.) In *Florey v. Meeker, supra,* the court noted:

> "Provision is frequently made in contracts for the subsequent modification thereof. Such changes can be accomplished by the unilateral action of one of the parties and without notice to the other, *if the contract so provides.*" 194 Or at 281. (Citations omitted; emphasis supplied.)

The question is whether the contract here so provided.

[362]

Revocation without notice would seriously undermine the expectations of the other party. Where, as here, the parties specifically limited the right of one to revoke after the death of the other, the contract should be interpreted to permit revocation without notice during the lives of both parties only if they clearly provided for that. The testators did not so provide, and there was no evidence that Harold notified Bessie of any revocation. He therefore breached the contract. Plaintiff was entitled to relief as a third party beneficiary.

■ There is a problem not raised by the parties. The particular relief requested by and granted to plaintiff was specific performance of Harold's 1972 will. That will had been revoked, however, either by destruction or by the August 18, 1976, will, as the trial judge recognized. Plaintiff could be granted relief *only on the contract.* But to compel specific performance of the contract was not proper because, despite the contract, Harold retained the right to revoke his will. *Popejoy v. Boynton,* 112 Or 646, 229 P 370, 230 P 1016 (1924). Were the record complete, we would undertake to amend the decree to award plaintiff relief under the contract. That would be proper because the complaint contained the traditional prayer for such equitable relief as the court might deem appropriate, all necessary parties were before the court, both the contract and the joint will were pleaded and all issues concerning plaintiff's rights under the contract were fully litigated.

The usual remedy in these cases is a constructive trust. *Schramm v. Burkhart,* 137 Or 208, 2 P2d 14 (1931); Sparks, *Contracts to Make Wills,* 147 (1956).[1] The evidence necessary to frame a decree awarding that relief here was not fully developed. The admission of the August 18, 1976, will to probate was pleaded, as

---

[1] The theoretical difficulties of imposing a constructive trust on legatees or devisees who have received their titles without any of the sorts of inequitable conduct which underlie the remedy in all other instances have apparently never been analyzed in opinions or texts.

was the Walshes' status both as beneficiaries and co-personal representatives under that will. However, there is nothing further in the record concerning that probate proceeding. There was no evidence concerning the nature and extent of Harold's estate or any distribution which may have been made from it or which is pending. Plaintiff did establish her entitlement to one-half of the residual estate, but on the record as it now stands we could not frame a complete decree directed to the proper parties. Under these circumstances it is appropriate to remand the matter for such further proceedings as the circuit court deems necessary in order to frame a decree granting plaintiff appropriate relief in accordance with this opinion.

Affirmed and remanded with instructions.