Argued and submitted March 26, affirmed July 11, 1984

DeLaMATER et al,
*Appellants,*

*v.*

DeLaMATER et al,
*Respondents.*

(E81-1189; CA A29022)

688 P2d 1350

Randolph J. Stevens, Roseburg, argued the cause for appellants. With him on the briefs was Cegavske & Seitz, Roseburg.

Gordon G. Carlson, Roseburg, argued the cause and filed the brief for respondents.

Before Gillette, Presiding Judge, Joseph, Chief Judge, and Van Hoomissen, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

■      In 1955 Abigail and Clyde DeLaMater, husband and wife, executed a joint and mutual will. The couple had no children from their marriage, but each had four children from previous marriages. Clyde died in 1965. The joint will was never probated.[1] In 1977, Abigail executed a second will, which would substantially change the distribution from that in the joint will. There are no provisions for Clyde's children, plaintiffs here, who brought this declaratory judgment action to determine their rights under the joint will. They contend that the will was based on a contract to make a will and that Abigail is bound by that contract. The trial court found that no contract exists. We affirm.

The Oregon law of joint wills was summarized in *Cook v. Walsh*, 39 Or App 357, 591 P2d 1201 (1979):

> "A joint will is a unitary testamentary instrument that constitutes the separate wills of each of the testators. *Florey v. Meeker*, 194 Or 257, 240 P2d 1177 (1952). Even if such wills are based on a contract under which each party's promise to make a particular disposition is exchanged for a similar promise by the other, each retains the right to revoke his *will*, before or after the death of the other. *Williams v. Chastain*, 221 Or 69, 350 P2d 430 (1960); *Florey v. Meeker, supra.* However, a party who revokes a joint will remains bound by the contract. *Williams v. Chastain, supra; Florey v. Meeker, supra.*" 39 Or App at 360.

■■      The issue is whether plaintiffs proved the existence of an underlying contract by clear and convincing evidence. *American Nat'l Red Cross v. Wilson*, 274 Or 237, 545 P2d 883 (1976); *Taylor v. Wait*, 140 Or 680, 684, 14 P2d 283 (1932). A contract to make a will is not established merely by the existence of a joint will. *American Nat'l Red Cross v. Wilson, supra,* 274 at 240. There was no express agreement to execute a will either in the will or in a separate document. Therefore, evidence of a contract must be found from the will itself and from the circumstances surrounding its execution. *Holman, et al v. Lutz, et al,* 132 Or 185, 208-09, 282 Pac 241, 284 P 825

---

[1] Apparently the only property not in joint names at Clyde's death were keepsakes and personal belongings. However, survivorship property is not *ipso facto* exempt from a contract to make a will. *See Ricks v. Brown,* 15 Or App 160, 515 P2d 206 (1973), *rev den* (1974).

(1930), overruled on other grounds, *State ex rel Madden v. Crawford,* 207 Or 76, 295 P2d 174 (1956).

■ Obviously, the joint will was executed by both testators at the same time, and they were aware of the mutual testamentary provisions. Those facts are not sufficient to prove a contract between the parties. *See American Nat'l Red Cross v. Wilson, supra,* 274 Or at 240. Paragraph 2 of the will states:

> "I, CLYDE ARTHUR DE LA MATER, and I, ABIGAIL DE LA MATER, do hereby bequeath and devise each to the other all real and personal property owned by either of us and wheresoever situated at the time of the death of either of us, the surviving testator to become beneficiary under this will to all real and personal property of the deceased testator, and to serve as executor or executrix, without bond, for the other remaining heirs."

The will then provides, in the event of the simultaneous death of the testators or upon the death of the survivor: (1) the children of each are each to choose a "keepsake" from the personal property of his or her parent; (2) a debt owed to Glen DeLaMater, a son of Clyde, is to be paid; and (3) the remaining property "owned by either of us" is to be divided equally among the children of both testators. Provisions are also made for the death of any of the children before the death of the testators or the survivor.

Plaintiffs argue that the will as a whole, rather than specific language in the document, is evidence of a contract. They contend that Clyde died believing that the provisions of the will would be carried out and that Abigail should be bound, because she benefited under the will. They rely on *Schramm v. Burkhart,* 137 Or 208, 2 P2d 14 (1931), where the surviving spouse was to have "full and complete possession" of the testator's estate. The court found that "neither testator made an absolute gift of property to the survivor." 137 Or at 211. The limitation placed on the testamentary estate, as well as oral declarations made by the testators, was held to prove the existence of a contract.

Here, however, the will, although inartfully drawn, gives an unrestricted estate to the surviving spouse. The language that the survivor spouse is "to serve as executor or executrix, without bond, for the other remaining heirs" does

not create a trust, nor does it restrict the survivor's use or disposition of the property. The provision that remaining property should go to the children also does not in terms limit the ability of the survivor to deal with the property in any way.

██ ██　　　Case law gives no absolute guidelines for what is required to show the existence of a contract to make a will.[2]

"[T]he execution of simultaneous mutual and reciprocal wills, their construction and legal effect, is a subject about which there has been much judicial utterance. However, an examination of these precedents show * * * that *each case is decided upon the peculiar facts therein presented." Holman, et al, v. Lutz, et al, supra,* 132 Or at 203. (Emphasis supplied.)

However, what *is* clear is that, unless a separate express contract exists or there is contractual language in the will, courts will not infer a contract without strong corroborating evidence. Plaintiffs urge that the testimony of Abigail provides that corroboration.

██　　　The trial court erred in refusing to consider the testimony of the testatrix, who was 88 at the time of trial. *Holman, et al, v. Lutz, et al, supra,* 132 Or at 210. However, our review is *de novo,* and we consider her testimony offered under the rule:

"Q　Mrs. DeLaMater, was [the will] the complete agreement between you and your former husband regarding disposition of your property?

"A　Yes.

"* * * * *

"Q　Did you intend to provide for both your children and his children through this document?

"A　In what way do you mean?

"Q　As I read the document, there are provisions made for your children and there are provisions made for his children. My question is, did you intend that this document would give them or provide for them from your estate?

"A　(Pause)

---

[2] There is a general lack of uniformity as to what factors will establish a contract to make a will. *See Annot.,* 17 ALR4th 161 (1982). The will was executed in 1955, and the later enacted statutory requirements to establish a contract to make a will do not apply. ORS 192.270.

"THE COURT: Do you understand the question?

"THE WITNESS: No, I don't.

"THE COURT: All right. Ask it again.

"Q   I will ask it a different way, Mrs. DeLaMater. Both you and Mr. DeLaMater had children from previous marriages?

"A   That's correct.

"Q   You were concerned that the children have personal items from each of you separately?

"A   Keepsakes or what?

"Q   Keepsakes and possessions?

"A   Yes.

"Q   So it was your intent in this will to make sure that the children of Mr. DeLaMater and the children of you would be provided for from your individual keepsakes and possessions?

"A   Yes."

We do not agree that that testimony proves that, when she signed the 1955 will, Abigail and her husband were " 'near to the point where arms length promises are exchanged, consideration exists, and a contract emerges.' " *See American Nat'l Red Cross v. Wilson, supra,* 274 Or at 240, quoting 1 Page on Wills 554 § 11.1 (Bowe-Parker revision 1960). As corroborating evidence, it is weaker than that which we rejected in *Parker v. Richards,* 43 Or App 455, 602 P2d 1154 (1979), *rev den* 288 Or 527 (1980), where the testator and his wife had executed mutual wills. The testator devised his property to his wife "for her full and free use, occupation and enjoyment as long as she shall live" and, at her death, one-half of the remaining property was to go to the testator's daughter. The plaintiff daughter introduced letters in which the surviving wife had acknowledged that one-half of any remaining interest would go to the daughter. The court did not find clear and convincing evidence of a contract to make a will and adopted the finding of the trial court that "the inept mechanics used made [the will] amount to no more than mutual expressions of then intent * * *." *Parker v. Richards, supra,* 43 Or App at 460.

The testimony of Abigail adds nothing of substance to what is evidenced by the will.[3] Furthermore, we also do not agree with plaintiffs that the delivery of her husband's keepsakes to his daughter and the payment of the acknowledged debt to his son by Abigail is clear and convincing evidence of a binding contract. Plaintiffs have not met the burden of proving that Abigail and Clyde executed the 1955 will on the basis of a contract.[4] "At most plaintiff[s have] proved past intention." *Parker v. Richards, supra,* 43 Or App at 460.[5]

Affirmed.

---

[3] "The clear weight of authority and certainly the sounder view, is that the mere presence of either joint or mutual wills does not raise any presumption that they were executed in pursuance of a contract. Nor is this rule altered by evidence that the parties had 'agreed' to the making of such wills. Of course they had so agreed. The mere presence of such wills reveals that the parties must have talked the matter over and must have arrived at an understanding or agreement concerning their testamentary dispositions. Such discussions and such understandings between persons of close affinities, especially between husbands and wives, are not unusual and the fact *that they have taken place is no indication that there has been any thought of a binding contract.*" Sparks, Contracts to Make Wills, 27-28 (1956). (Footnotes omitted; emphasis supplied.)

[4] The standard of clear and convincing evidence is demonstrated by *Schaad v. Lorenz,* 69 Or App 16, 688 P2d 1342 (1984), where the will had specific contractual language. *See also Williams v. Chastain, supra* (separate contract); *Peterson v. Woods,* 48 Or App 675, 617 P2d 915 (1980); *Cook v. Walsh, supra* (contractual language in will); *Woelke v. Clafee,* 45 Or App 459, 608 P2d 606 (1980); and *Schramm v. Burkhart, supra* (proof of oral contract).

[5] Because we find that no contract existed, we do not reach plaintiffs' third assignment of error.