Argued and submitted February 11, affirmed March 24, 1980

WOELKE,
*Respondent,*
*v.*
CALFEE, Personal Representative
of the Estate of Hilda C. Woelke,
Deceased, et al,
*Appellants.*

(No. 104756, CA 15001)

BURNHAM,
*Respondent,*
*v.*
CALFEE, Personal Representative
of the Estate of Hilda C. Woelke,
Deceased, et al, *Appellants.*

(No. 104757, CA 15002)

(Cases Consolidated)

608 P2d 606

Malcolm L. Brand, Salem, argued the cause for appellants. With him on the brief was Rhoten, Rhoten & Speerstra, Salem.

Daniel A. Ritter, Salem, argued the cause for respondents. With him on the brief were Roy Harland and Harland, Ritter, Saalfeld & Griggs, Salem.

Before Joseph, Presiding Judge, Richardson, Judge, and Schwab, C. J.*

JOSEPH, P. J.

---

*Schwab, C.J., *vice* Lee, J., deceased.

**JOSEPH, P. J.**

Peter and Mabel Woelke were the parents of Hazel Ruth Burnham and William C. Woelke, the plaintiffs in these consolidated suits. Peter and Mabel Woelke were the owners of a farm located in Marion County. In 1939, Mabel Woelke died. Later the same year, Peter Woelke executed a will leaving his entire estate (the principal component of which was the farm) to his children Hazel and William in equal shares.

In 1940, Peter Woelke married his second wife, Hilda. He retained sole title to the farm. On May 31, 1945, Peter and Hilda Woelke executed reciprocal wills, by which they would leave their respective estates to the other or, in the event of the other's nonsurvivorship, to plaintiffs Hazel Burnham and William Woelke in equal shares. Peter Woelke died in 1969. In 1971, Hilda Woelke executed a new will, leaving the greater part of her estate to her nephew, the defendant Daryl Calfee.

Hilda Woelke died in 1977. The defendant Carolyn Calfee is the personal representative of Hilda Woelke's estate. After unsuccessfully claiming against the estate, plaintiffs brought these suits, alleging that Hilda Woelke's May 31, 1945, will was executed pursuant to an oral contract between Peter and Hilda Woelke which the plaintiffs seek to enforce specifically. Defendants appeal from the trial court's decree in favor of plaintiffs. We affirm.

The Supreme Court stated in *Taylor v. Wait*, 140 Or 680, 14 P2d 283 (1932), that an enforceable contract to devise property in accordance with the testamentary plan of reciprocal wills will be found in

> "[c]ases where the wills themselves do not refer to each other or disclose any contract, but which are nevertheless taken into consideration, together with all of the facts and circumstances surrounding their execution, in determining the existence of an alleged contract." 140 Or at 684.

[461]

To the same effect, *see Patecky v. Friend et al*, 220 Or 612, 350 P2d 170 (1960); and *Stevens v. Myers*, 91 Or 114, 177 P 37, 2 ALR 1155 (1918).[1]

The Supreme Court also stated in *Taylor:*

"The mere fact, in itself, that a husband and wife have made mutual and reciprocal wills does not necessarily establish that they acted pursuant to any agreement. Mutual love and affection may well cause a husband and wife thus to dispose of their respective properties. It does not follow, however, that, because the wills in themselves do not show a contract, they will be excluded from consideration in determining whether in fact they were executed pursuant to a contract: *In re Burke's Estate*, 66 Or. 252 (134 P. 11); Page on Wills (2d Ed.) § 118. It is elementary that a will not made pursuant to an agreement is revocable. It is likewise well established that if A enters into an agreement with B to make certain disposition of his property by will in consideration of B's promise to make a will, and, after complying with his part of the contract, A dies relying upon such promise, B, who has accepted the benefits of such an agreement, will not be permitted to rescind. Equity will enforce the agreement by impressing a trust upon the property of B's estate in favor of those for whom the contract was made. A promise to make a will is consideration for a promise to make a will in return * * *." 140 Or at 684-685.

The question before us is factual: Was there a contract between Peter and Hilda Woelke which was

---

[1] ORS 112.270 provides:

"(1) A contract to make a will or devise, or to die intestate, executed after January 1, 1974, shall be established only by:

"(a) Provisions of a will stating material provisions of the contract;

"(b) An express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or

"(c) A writing signed by the decedent evidencing the contract.

"(2) The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills."

The statute, enacted in 1973, is inapplicable to the contract in this case.

reflected by the testamentary plan of their May 31, 1945, wills, with the effect that Hilda Woelke, the survivor, was foreclosed after Peter Woelke's death from revoking her 1945 will, and that the beneficiaries under that will are entitled to specific enforcement of the contract? The evidence is clear and convincing that the answer is yes.

The wills were executed on the same day. They were prepared by the same attorney. Their language is identical, except where the wills each refer to the maker of the other. At the time the wills were executed, Peter Woelke had sole title to the farm, and Hilda Woelke obtained no interest in the farm until his death in 1969, when she acquired his estate through his 1945 will. Prior to the execution of the 1945 wills, Peter Woelke had executed a will under which all of his property was to be divided equally between his two children. The testamentary plan under the two 1945 wills, taken together, changed that disposition of Peter Woelke's estate only by providing that, in the event Hilda Woelke survived him, his children would acquire his estate upon her death rather than his. Most significantly, under the 1945 wills, if Hilda Woelke survived her husband, she was to receive *his* property upon his death and was in turn to leave *his and her* property to *his* children.

In addition to the foregoing facts relating to the substance of the wills and the circumstances surrounding their execution, evidence of Peter and Hilda Woelke's statements regarding the disposition of their property also leads to the conclusion that the wills were made pursuant to the oral contract alleged by plaintiffs. Hazel Burnham testified that, after Peter Woelke's death, Hilda Woelke stated to her:

> " 'I can't sell the farm. Your Dad and I agreed I'd live here until I died and then you could worry about it.' "

Mrs. Burnham also testified:

> "* * * [S]he [Hilda] said, 'There is no Will, there's just an agreement that your dad and I had.' "

[463]

Velma Wilkinson, who had purchased 20 acres of land from Peter Woelke in 1963, testified that, in explaining to her why he would not sell two additional acres to Mrs. Wilkinson's son-in-law, Peter Woelke stated in his wife's presence:

" 'No way, I have sold all the property I intend to sell.' He said, 'Hilda and I agreed that we were not selling any more property because a man has to have something to leave to his children.' "

Mrs. Wilkinson also testified that when she and her husband visited Peter and Hilda Woelke in early 1969 to pay the balance on the contract for the 20 acres the Wilkinsons had purchased from Mr. Woelke, the following discussion took place between her and Peter Woelke:

"* * * I said, 'Well, just come over to tell you you're a richer man tonight,' I said, 'because we finished paying off the place.' And he said, 'No, I'm not a richer man. Hilda is a richer woman because,' he said, 'it was our agreement the money from the 20 acres was Hilda's—that we would both live on this place as long as we lived and then the place goes to Bill and Hazel.' And Hilda sat there and nodded her head yes that was so."

Beula Stanbach, the former wife of William Woelke, testified that Peter Woelke stated in his wife's presence in a conversation on Christmas Day in 1957 or 1958

"* * * that after he and Hilda had passed away that Bill and Hazel would assume the farm."

We conclude that plaintiffs proved by clear and convincing evidence that the May 31, 1945, wills of Peter and Hilda Woelke were executed pursuant to an oral contract that, after the survivor of them died, their property would pass to plaintiffs. ■

Defendants argue that the trial court erred in admitting and considering testimony regarding certain statements made by Peter Woelke outside the presence of Hilda Woelke. However, as illustrated above, there ■

[464]

was ample evidence other than the testimony complained of to prove the contract. *Patecky v. Friend et al, supra*, 220 Or at 623.

Affirmed.