Argued and submitted June 11, affirmed October 24, reconsideration denied December 7, 1984, petition for review allowed January 22, 1985 (298 Or 553)

# WILLBANKS,
*Respondent,*

*v.*

# GOODWIN et al,
*Appellants.*

(82-9-385; CA A29651)

689 P2d 1004

Ferris F. Boothe, Portland, argued the cause and submitted the briefs for appellants.

Stanley D. Gish and Stephen F. Crew, Portland, argued the cause for respondent. With Stephen F. Crew on the brief were O'Donnell, Sullivan & Ramis, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

### WARDEN, J.

This is an action for specific performance of an oral contract allegedly made in connection with the execution of reciprocal wills by Charles Willbanks, Sr. and Lillian Willbanks and for imposition of a constructive trust on the net assets of the estate of Lillian Willbanks. The issues are whether plaintiff's complaint was time barred and whether the alleged contract had been established and should be specifically enforced. We review *de novo,* ORS 19.125(3), and affirm.

The relevant genealogical history is as follows: Charles Willbanks, Sr. and Lillian Willbanks had one child, Charles, Jr. Charles, Jr. and his wife, Lorraine, had two children, Will Willbanks and LaVonne [Willbanks] Mars. Will is the father of three children—Amy, Sally and Wanda Willbanks. LaVonne is the mother of three children—Amber, Ember and Angel Mars. Will is the plaintiff in this action; defendants are the personal representative of the estate of Lillian Willbanks and LaVonne Mars and her children.

Charles Willbanks, Sr. died testate on December 21, 1968. His will, dated December 8, 1959, contained the following dispositive provisions:

> "SECOND, I hereby give, devise and bequeath unto my son, Charles Richard Willbanks, the sum of Fifty ($50.00) Dollars.

> "THIRD, I hereby give, devise and bequeath all the rest, residue and remainder of my property, both real, personal and mixed unto my wife, Lillian C. Willbanks.

> "FOURTH, In the event my said wife, Lillian C. Willbanks, predeceases me, then and in that event, I hereby give, devise and bequeath all my property both real, personal and mixed unto my two grandchildren, to-wit: LaVonne May Mars, now residing at Clackamas, Oregon; and Will Charles Willbanks, now residing with his parents at Route 3, Oregon City, Oregon, in equal shares."

Pursuant to the terms of that will, Lillian Willbanks took all of Charles Willbanks, Sr.'s estate, except the $50 gift to Charles, Jr. Lillian died testate on May 15, 1981. Her will

dated July 18, 1978, made the following disposition of her estate:

"THIRD: I give the sum of $10,000.00 to my trustee hereinafter named, in trust for the following purposes:

"(a)   Said trustee shall hold said trust, and pay therefrom to my son, Charles Willbanks, no more than $125.00 per month, including both principal and interest. In the event of the death of my son, Charles, the trust shall be paid out by my trustee at the same rate of not more than $125.00 per month to my daughter-in-law, Lorraine Willbanks * * *.

"(b)   Said trustee may sell, convey, transfer, invest, or may borrow money, pay debts, compromise, settle, waive or sue on claims, and do everything and anything necessary in the management of said trust as fully as I could do myself * * *.

"FOURTH: I give my home, household goods, farm of 47+ acres and including tools, implements and equipment of every type located at Carus, on Highway 213, Clackamas County, Oregon, to my trustee hereinafter named, in trust for my granddaughter, LaVonne Mars, and her three daughters, Ember, Amber and Angel, a one-quarter share each, with the right of representation in each case. The personal property on the farm, and the use and possession of the land and improvements shall be immediately delivered to such beneficiaries in equal shares. My trustee shall simply hold title to the farm, so that there shall be no sale of the farm nor any portion thereof prior to the 25th birthday of LaVonne Mars' youngest daughter. LaVonne and her daughters may manage and maintain the farm as they see fit until legal title is delivered to them.

"Immediately when LaVonne Mars' youngest daughter attains the age of 25 years, the farm title portion of the trust shall be distributed to LaVonne Mars and her three daughters, Ember, Amber and Angel, a one-quarter share each, with the right of representation as to LaVonne and the three great granddaughters; otherwise equally among the survivors of this class of four.

"FIFTH: I hereby instruct my personal representative to sell all my rental properties, and other assets, to liquidate the same, and all the said residue of my estate, wheresoever situate of which I may die seized or possessed, or to which I may be entitled at the time of my death, I give in equal shares to be divided among my two grandchildren, LaVonne Mars

and Will C. Willbanks, and my five great grandchildren, Ember, Amber and Angel Mars, and Amy and Sally Willbanks, with the right of representation of any who might predecease me * * *."

A codicil of August 26, 1980, amended the third paragraph with the following explanation:

"Paragraph Third shall read as follows:

"THIRD: I give the sum of $100.00 each to my son, Charles Willbanks, and to his wife, Lorraine Willbanks.

"I make this change in my will for the reason that both my late husband, Charlie, and I have, since his death, made rather constant and substantial outlays of monies and property to my son and wife, or on their behalf."

Probate of the estate of Lillian Willbanks commenced on May 22, 1981. Notice to interested persons pursuant to ORS 133.155 was first published on June 2, 1981. On August 18, 1982, plaintiff filed in the probate proceedings his "Claim of Will Charles Willbanks against the estate of Lillian C. Willbanks," alleging entitlement to one-half of the estate as an heir under mutual reciprocal wills executed by Lillian and Charles Willbanks, Sr., and allegedly made pursuant to an oral agreement as to the disposition of their respective estates. That "claim" initially was presented to the executor, who disallowed it on August 31, 1982. On September 23, 1982, plaintiff filed this action for specific performance of the alleged contract and for imposition of a constructive trust on the assets of Lillian's estate. After a trial to the court, judgment was entered in favor of plaintiff. This appeal followed.

Defendants' first two assignments of error are the trial court's denial of their motion to dismiss plaintiff's complaint on the ground that it was time barred under ORS 115.005 and its granting of plaintiff's motion to strike defendant's affirmative defense of the statute of limitations. The assignments raise the same legal issue of the applicability of ORS 115.005, and we discuss them together.

The initial issue for our determination is whether an action for specific performance of an oral contract to make a

will is a "claim against the estate of a decedent" within the purview of ORS 115.005:

> "(1)  Claims against the estate of a decedent, other than claims of the personal representative as a creditor of the decedent, shall be presented to the personal representative.
>
> "* * * * *
>
> "(3)  If notice to interested persons is published, claims not presented before the expiration of 12 months after the date of the first publication of notice to interested persons, or before the date the personal representative files his final account, whichever occurs first, are barred from payment."

A similar problem of statutory construction was considered by the Supreme Court in *Harris v. Craven,* 162 Or 1, 91 P2d 302 (1939). In that case, the plaintiff sought specific performance of an alleged oral promise to bequeath property. Defendants argued that the plaintiff had failed to meet the evidentiary requirements of § 11-504, Oregon Code 1930, which provided in part:

> "No claim which shall have been rejected by the executor or administrator, as aforesaid, shall be allowed by any court, referee or jury, except upon some competent, satisfactory evidence other than the testimony of the claimant."

The court noted that, if the plaintiff's evidence of an oral contract were true, the decedent's property devolved to the plaintiff upon the decedent's death, and the executor named in the purported last will held it in trust for the plaintiff. It concluded that such a claim to the estate was not within the contemplation of statutes such as the above, which referred only to pecuniary demands that the personal representative could satisfy out of the general funds of the estate. Therefore, because the claim was not one which the executor could approve or disapprove, plaintiff was not required to submit it to him; accordingly, § 11-504 was inapplicable, and the plaintiff did not need to present corroborating evidence. 162 Or at 18-19.

■  Although *Harris v. Craven, supra,* dealt with an evidentiary statute rather than a statute of limitation, the theoretical basis of that decision is pertinent to the issue before us. The rationale of *Harris v. Craven, supra,* is that a

potential legatee's assertion of a right to take from an estate is not subject to the statutory requirements applicable to a creditor presenting a pecuniary claim against an estate. Applying that reasoning here, we conclude that an action for specific performance of a contract to make a will brought by a third party beneficiary of that contract is not a "claim against the estate of a decedent" within the meaning of ORS 115.005. Rather, the plaintiff in such an action is claiming title to the assets of the estate, and thus may bring an action without first presenting a claim against the estate of the personal representative.

We have not overlooked defendant's contention that the probate code was substantially revised in 1969, after *Harris v. Craven, supra,* was decided, and that the definition of claim adopted at that time by the legislature is broad:

" 'Claim' includes liabilities of a decedent, whether arising in contract, in tort or otherwise." ORS 111.005(7).

That definition, however broad it may be, is nonetheless restricted by the proviso of ORS 115.005(1) that a claim be one *against* the estate. We do not believe that *Lawrence v. Ladd,* 280 Or 181, 570 P2d 638 (1977), cited by defendants as implicitly holding that contracts to make a will are within the definition of "claim" under the 1969 probate code, dictates a more expansive interpretation. In that case, the plaintiff sought money damages for breach of an alleged express oral agreement that the decedent would leave his estate to the plaintiff in consideration of support provided and personal services performed, or alternatively, recovery in *quantum meruit* for the reasonable value of services performed. At issue was the application of ORS 115.195, which, like its predecessor § 11-504, Oregon Code 1930, requires corroborating evidence of a claim presented to and disallowed by the personal representative.[1] Without mentioning *Harris,* the court held in *Lawrence* that the plaintiff was required under ORS 115.195 to present corroborating evidence of her claim. Her claim

---

[1] ORS 115.195 provides:

"A claim that has been disallowed by the personal representative may not be allowed by any court except upon some competent, satisfactory evidence other than the testimony of the claimant."

under either theory, however, unlike the action in *Harris,* was at law for money damages, not in equity asserting title to the estate. The claim, therefore, was one against the estate, and the issue was analyzed in light of cases of similar focus. We discern nothing in *Lawrence v. Ladd, supra,* to indicate an intention by the Supreme Court to overrule *Harris v. Craven, supra, sub silentio,* nor to suggest that the distinction between an action asserting a right to an estate through specific performance of a contract to make a will and that prosecuting a pecuniary claim against an estate has been abrogated in Oregon.[2] *See also First National Bank v. Dept. of Rev.,* 294 Or 60, 653 P2d 985 (1982).

■ We conclude that plaintiff's action for specific performance of a contract to make a will and imposition of a constructive trust is not a "claim" within the purview of ORS 115.005. Accordingly, it is not time barred by ORS 115.005(3). The trial court did not err in denying defendants' motion to dismiss the complaint on that ground or in striking defendants' affirmative defense of the statute of limitations.

In their third and fourth assignments of error, defendants contend that the trial court erred in finding that Lillian Willbanks executed a will, dated December 8, 1959, pursuant to a contract with her husband, which became irrevocable after his death, and in entering judgment based on that finding in favor of plaintiff. The thrust of defendants' argument appears to be that there was insufficient proof of an agreement by Lillian to not revoke that will.

---

[2] As stated by Professor Sparks:

"The question whether or not the promisee's rights are affected by statutes regulating the time within which claims must be filed against decedent's estates or fixing the time within which action upon such claims must be brought has often been before the courts. * * * The proper solution is usually found through an examination of the type of remedy pursued by the promisee. If the action is at law for damages a claim must be filed against the estate within the time allowed by the nonclaim statutes. If an equitable remedy in the nature of specific performance is sought the promisee is making no claim against the estate and need not be bound by the nonclaim statutes. He is claiming title and may bring his action without ever filing a claim against the estate and after the time permitted for the filing of such claims has expired. This result is reached wherever ground for equitable jurisdiction is found whether that jurisdiction rests upon the fact that the contract is for all or a fractional part of the estate, specific real property, unique chattels, or some other reason." Sparks, Contracts to Make Wills 184 (1956) (footnotes omitted).

Preliminarily, we find that the existence of mutual and reciprocal wills dated December 8, 1959, by Lillian and Charles Willbanks, Sr. has been established, and that the language of the two wills was identical except where each referred to the maker of the other. Testimony that such wills were executed was given by a disinterested witness, Marie Martin, who was secretary to Biggs, the attorney who prepared the wills, and who took the dictation concerning them.[3] We find her testimony clear and convincing evidence of the fact that they were so executed. We turn therefore to the principles governing mutual and reciprocal wills.

In *Schramm v. Burkhart,* 137 Or 208, 215, 2 P2d 14 (1931), the Supreme Court stated:

"* * * It is established law that if two parties verbally agree, each in consideration of the other doing likewise, to make their wills disposing of their property in a specified manner and one dies leaving a will which complies with the contract and the survivor accepts benefits under the will, noncompliance with the agreement by the survivor would operate as a fraud which a court of equity will prevent. In such case the acts done by the other in compliance with the agreement is such a part performance as would take the case out of the statute of frauds and equity will compel the fulfillment of the contract: In re *Burke's Estate,* 66 Or. 252 (134 P.11). This rule of law is so well settled that further citation is unnecessary."

*See also Irwin v. First Nat'l Bank,* 212 Or 534, 541, 321 P2d 299 (1958); *Taylor v. Wait,* 140 Or 680, 684-85, 14 P2d 283 (1932); *Woelke v. Calfee,* 45 Or App 459, 462-63, 608 P2d 606 (1980).

Oregon law also is well established that a characteristic of every will is that it remains revocable during the testator's lifetime, notwithstanding that it was made pursuant to contract. If the will was made in compliance with a contract, however, the revocation will not circumvent the enforcement of the contract, and a beneficiary of that contract has a remedy for its breach. *Irwin v. First Nat'l Bank, supra,* 212 Or at 540-41; *Florey et al v. Meeker et al,* 194 Or 257, 277, 240 P2d 1177 (1952); *Van Vlack et al v. Van Vlack,* 181 Or 646, 668, 182 P2d 969, 185 P2d 575 (1947). There is no evidence in this record that either decedent during the lifetime of both

---

[3] Biggs was not available to testify.

attempted to revoke his or her will of December 9, 1959, and it is undisputed that Lillian received the benefit of the bulk of Charles, Sr.'s estate under his will. Accordingly, the issue for our determination is not whether there is evidence Lillian agreed not to revoke her 1959 will, but whether the mutual and reciprocal wills at issue here were made pursuant to a binding contractual agreement, which contract became irrevocable on the death of Charles, Sr. and the acceptance of benefits under his will by Lillian. Plaintiff has the burden of proving by clear and convincing evidence the existence of such a contract. *American Nat'l Red Cross v. Wilson,* 274 Or 237, 545 P2d 883 (1976).

■ ■    The mere existence of mutual and reciprocal wills alone is not sufficient to establish action by agreement, but such wills may be considered in determining if in fact they were executed pursuant to a contract. *Patecky v. Friend et al,* 220 Or 612, 623-24, 350 P2d 170 (1960); *Taylor v. Wait, supra,* 140 Or at 684-85. Where, as here, there is no express agreement either in the wills themselves or in a separate document, we examine the facts and circumstances surrounding their execution to determine the existence of a contract; each case depends upon its own peculiar facts. *Taylor v. Wait, supra,* 140 Or at 684-85.

■    In this case, the evidence is clear that the wills were executed at the same time, and that both testators were aware of the mutual provisions. Of greater significance than the timing and mutuality of the wills, however, are the circumstances surrounding their execution. Ms. Martin, secretary to the attorney who drafted the wills, testified to the following: Before the wills were drafted, Charles, Sr. and Lillian came into the office and talked to Biggs; they left after that conference in apparent disagreement. After they left, Biggs stated that Charles, Sr. wanted both of them to make a will that "couldn't be broken," and that Lillian did not want that kind of will, and that he had told them to go to another attorney if they wanted such a will. Later, Charles Sr. and Lillian returned, and the wills dated December 9, 1959, were prepared and executed. At the time of signing, in response to the question if it was her last will and testament, Lillian said "[I]t isn't exactly what I wanted, but *I will go along with Charles.*" (Emphasis supplied.)

We also find pertinent evidence of the contemporaneous familial relationships. The record is replete with evidence of Lillian's animosity toward her son, Charles, Jr. and her grandson, Will Willbanks (plaintiff in this action), and her favoritism toward her granddaughter LaVonne Mars (one of defendants); the record also establishes that Charles, Sr. did not share those feelings but had good relationships with all. We consider that evidence relevant to show the intent of Charles, Sr. and Lillian in determining the disposition of property under the 1959 wills.

Plaintiff and Lorraine, the mother of both plaintiff and defendant LaVonne Mars, both testified to conversations with Charles Willbanks, Sr. before his death. The gist of their testimony was that the decision of him and his wife, Lillian, to leave their estate to their two grandchildren, plaintiff and LaVonne, in equal shares, was a compromise. Lillian wanted to disinherit both their son and plaintiff, their grandson, but agreed to leave their estate to plaintiff and his sister LaVonne in equal shares, provided their son Charles was effectively disinherited. A long-time acquaintance of the family, Gene Greenslitt, also testified to a conversation with Charles, Sr. in which "he said his two grandchildren would end up with [his property]."

Considering the surrounding facts and circumstances, we conclude that when Lillian Willbanks signed the 1959 will, it was pursuant to an oral contract with Charles, Sr. as to the ultimate disposition of their property. The evidence of disagreement over the preparation of the wills and of the statements attributed to Lillian at the time of signing, together with evidence of the familial relationships, does not permit an inference that the mutual provisions of the 1959 wills stemmed from a "flowing together of life, thought and action [which] * * * connotes the mutual bestowal of benefits growing out of devotion and intimate association entirely independent of consideration and without thought of contract." *Ridders v. Ridders,* 156 Or 165, 172, 65 P2d 1424 (1937), citing *Wilson v. Gordon,* 73 S.C. 155, 160, 53 SE 79 (1905). The only reasonable inference to be drawn is that the wills were the result of an arms-length transaction reflecting a compromise agreement reached only after negotiation between the

testators.[4] The testimony of plaintiff and Lorraine Willbanks further compels that inference. Plaintiff has met his burden of proving by clear and convincing evidence that Lillian and Charles Willbanks, Sr. executed the 1959 wills on the basis of a contract.

Affirmed.

---

[4] We do not believe that the fact that the attorney who drafted the wills advised against "a will that couldn't be broken" militates against the existence of a contract under these circumstances. At most, it explains the lack of contractual language in the documents themselves, and the testators' reliance on an oral agreement. *Cf. Gill v. Hewitt*, 244 Or 242, 417 P2d 399 (1966) (no inference of contract drawn from existence of mutual and reciprocal wills where only evidence was that attorney advised testators against joint will).