Argued and submitted December 12, 1991, affirmed December 30, 1992, decision
withdrawn on court's own motion (pursuant to 11 USC § 362 and ORAP 8.20)
February 3, decision re-issued and case caption amended by order April 2, 1993

Karen J. WILKINSON,
now known as Karen Jean Bostock,
by Robert K. Morrow, Inc., Trustee of
the Bankruptcy Estate of Karen Jean Bostock,
*Plaintiff-Respondent,*

*v.*

Helen HIGGINS,
*Defendant-Appellant.*

(88-9-147; CA A63426)

844 P2d 266

Lee A. Hansen, Portland, argued the cause for appellant. With him on the briefs was Hansen & Uffelman, Portland.

Kathryn H. Clarke, Portland, argued the cause for respondent. With her on the brief was Cristie Coates Leto, Portland.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Defendant appeals from a judgment declaring plaintiff to have an undivided one-half interest in real property. We review *de novo*, ORS 19.125(3), and affirm.

John Higgins, who was married to defendant, first met plaintiff at a local hunt club. They became romantically involved in 1977. John moved into plaintiff's home that year. John and defendant agreed to a separation in December, 1978, but did not dissolve their marriage. Nevertheless, John and plaintiff held themselves out as husband and wife during the ensuing years, until his death.

John's and plaintiff's interest in horses became an important part of their relationship. Plaintiff had owned show horses since she was a child and began to develop experience with racehorses when she was in high school. In 1978, John leased property in Estacada to use as a horse run. The next year, the property was purchased for $200,000, and title was taken in John's name with a "partnership" interest reserved to Pearson, the seller's daughter. John and plaintiff moved into a mobile home on the land and named the property "Kajon Oaks Farm." "Kajon" was a combination of their first names. They operated the farm as a business through a corporation called Prudent Amigos, Inc., which John and others had formed to invest in horses. Plaintiff quit her job to devote her full attention to fixing up the place and working with the animals to make Kajon Oaks a profitable racehorse farm. She was personally involved in virtually all of the work on the farm, while John devoted most of his efforts to his law practice. All of the income that the farm generated was put back into it. Neither John nor plaintiff received compensation from that enterprise.

In 1980, John obtained $35,000 by increasing the mortgage on the home in which defendant lived, with defendant's consent. He also borrowed $9,257.79 from plaintiff, evidenced by a promissory note. He combined those funds with other money[1] to buy Pearson's "partnership" interest,

---

[1] The "other money" came from an account that was in his name with "Mrs. John Higgins." John had controlled that account for several years, and defendant knew little, if anything, about it. Plaintiff had signed "a card from the bank" for that

after which title to the land was in his name alone. Plaintiff testified that, in 1984, John showed her a deed that purported to convey to her an undivided one-half interest in the farm. She testified that she could not remember clearly whether John had signed the deed, but he told her to put it in a safe place, and she had placed it in a file drawer at the farm, to which she and John had access.

On November 16, 1987, John took his own life. He had executed a will in October and, shortly before his death, he wrote a letter to his brother, whom he had named as his personal representative. Among other things, the letter described his assets, including life insurance policies that named as beneficiaries plaintiff, defendant and all of his children. It also explained that insurance would pay off the mortgage on the farm and that he had "signed a deed to Helen to be recorded." All of the documents, including the signed deed to defendant, were in an envelope in the top right hand drawer of his desk at his law office. The deed had never been delivered and, apparently, no one except his brother knew anything about it until after his death. No signed deed conveying an interest to plaintiff was found.

Plaintiff alleged in her complaint that she and John had a confidential and fiduciary relationship, because they behaved as, and held themselves out to be, husband and wife and because they had a business agreement about the development of Kajon Oaks Farm. She sought a declaration that she is entitled to one-half of all of the property that she and John acquired during their relationship and partition of the real property. The trial court concluded that it was bound by *Beal v. Beal*, 282 Or 115, 577 P2d 507 (1978), to "distribute property in accordance with the express or implied intentions of the parties and, in so doing, apply such equitable adjustments as fairness dictates." It then found that plaintiff and John "intended from the outset to jointly own, operate and develop Kajon Farms as the center piece of their domestic *and* business partnership." (Emphasis supplied.) The only claim at issue on appeal is the trial court's judgment declaring that plaintiff has an undivided one-half interest in the land.

---

account, but she testified that the account had been opened before then, because "there were old check receipt books."

■ Plaintiff also filed several claims against John's estate, which were disallowed by the personal representative. Defendant, therefore, assigns error to the court's failure to apply ORS 115.195:

> "A claim that has been disallowed by the personal representative may not be allowed by any court except upon some competent, satisfactory evidence other than the testimony of the claimant."

She argues that the rule should apply to this claim for the same reasons that it would apply in an action against the estate. Plaintiff contends that the statute does not apply, because she is not making a pecuniary claim for her services or some other debt; instead, she claims ownership of a part of the real property that was included in John's estate.

■ Plaintiff's claim to an interest in the land, to the extent that it is based on her partnership in the business, is not a claim against John's estate, because her rights in specific partnership property depend on her status as a partner, not on John's being deceased. ORS 68.420. Declaring a partner's rights in partnership property is not within the scope of a personal representative's official duties. *Harris v. Craven*, 162 Or 1, 18, 91 P2d 302 (1939); *see also Willbanks v. Goodwin*, 70 Or App 425, 431, 689 P2d 1004 (1984), *rev'd on other grounds* 300 Or 181, 709 P2d 213 (1985).

■ ■ Defendant also argues that plaintiff has no valid claim based on the business partnership, because "that business had ceased operating prior to John's death." That argument is without merit. Even if a partnership ceases to do business, the partnership does not cease to exist after the death of a partner until its affairs have been wound up. ORS 68.520. Therefore, plaintiff's claim to a partner's interest in Kajon Oaks is not a claim against the estate and is not a "claim that has been disallowed by the personal representative" within the meaning of ORS 115.195. The statute does not apply here.

■ Nevertheless, plaintiff has the burden to prove that she was a business partner. The parties did not have a written partnership agreement. However, the existence of a partnership "may be inferred from the conduct of the parties in relation to themselves and to third parties." *Hayes v.*

*Killinger*, 235 Or 465, 471, 385 P2d 747 (1963). The right to share in profits, liability for losses and the right to exercise some control of the business are all factors to be considered. *Stone-Fox, Inc. v. Vandehey Development Co.*, 290 Or 779, 783, 626 P2d 1365 (1981). John had purchased life insurance through the Harness Horsemen International that listed plaintiff by her true name as the beneficiary and identified her as "partner," which indicates that he regarded her as a business partner. Evidence also shows that plaintiff was responsible for virtually all of the day-to-day decisions about training and caring for the horses and that she bore the brunt of responsibility for transporting the horses and attending the sales. Although all of the income from the farm was, apparently, put back into the business, the evidence shows that plaintiff contributed her labor without salary or wages, so that, if the business failed to show a profit, she would suffer the losses of a partner.

Defendant argues that plaintiff's labor must be presumed to have been gratuitous, because plaintiff and John were involved in a domestic relationship. She asserts that *York v. Place*, 273 Or 947, 544 P2d 572 (1975), governs:

> "[P]ersons living together in a close relationship perform services for each other without expectation of payment. Payment in the usual sense is not expected because the parties mutually care for each other's needs. Also because services are performed out of a feeling of affection or a sense of obligation, not for payment." 273 Or at 950.

The "services" at issue in *York*, however, were clearly *domestic* services. The court described them as "the kind that a wife would furnish her husband." 273 Or at 948. Plaintiff does not assert that her partnership in the business was based on her performance of "housework and other chores a farm wife generally does." 273 Or at 948.

Although plaintiff might have done that kind of work in her domestic relationship with John, her contributions *to the business* included digging ditches, building and repairing barns, fences and other structures and providing all of the care for as many as 38 horses at one time. She was responsible for training, breeding, transporting and selling the stock, as well as attending to the animals' general welfare and routine medical requirements. She performed virtually all of the

tasks that directly involved the essential purpose of the business — raising, training and racing horses for a profit. Moreover, she brought extensive equestrian expertise to the enterprise. Before she met John, she had not only raised and trained her own horses, but also had trained horses for others, had acted as an agent to buy and sell horses and was "an accredited, licensed American Horse Show Association judge."

Those contributions go well beyond the kind of labor that is incident to a domestic relationship. Therefore, the presumption that her contributions to the relationship were gratuitous is overcome. The evidence shows that plaintiff acted as a business partner in Kajon Oaks Farm and that she was generally regarded by others as having a partner's authority. The trial court, therefore, correctly concluded that she is entitled to a business partner's interest in the property.

Because plaintiff's interest in the property does not depend on her domestic relationship with John, we need not reach defendant's argument that *Beal v. Beal, supra,* cannot apply when one or both of the domestic partners is married to someone else. *See Bush v. Greyhound Lines, Inc.,* 295 Or 619, 623, 669 P2d 324 (1983).

Affirmed.