2006 ND 86

**STEEN AND BERG CO., a North Dakota Corporation, Plaintiff and Appellee**

v.

**Jean BERG as Personal Representative of the Estate of R.W. Berg, Defendant and Appellant.**

No. 20050155.

Supreme Court of North Dakota.

April 25, 2006.

Robert G. Manly, Vogel Law Firm, Moorhead, MN, for plaintiff and appellee.

Jonathan T. Garaas, Garaas Law Firm, Fargo, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Jean Berg, as the personal representative of the estate of R.W. Berg ("the estate"), appealed from a summary judgment ordering Steen and Berg Company

("Steen") to pay the estate $160,741 plus interest, and ordering the estate to tender R.W. Berg's shares and interest in the company to Steen in exchange for the payment under the terms of a stockholders' agreement. We conclude Steen's claim against the estate is barred by the nonclaim provisions of N.D.C.C. § 30.1–19–03(2)(b), and we reverse.

I

[¶ 2] Steen is a Fargo automobile repair business that was formed as a corporation by R.W. Berg, his brother, James Berg, and Vernon Baenen. In 1970, they entered into a stockholders' agreement that provided in part:

### DEATH OF A STOCKHOLDER

If a Stockholder shall die, then immediately after his death the Corporation shall purchase all of his stock at its book value. The estate of the decedent shall be obligated to offer the stock for sale to the Corporation, and the offer shall be made or deemed made within 10 days after the death of the Stockholder.

. . . .

### DEFINITION OF BOOK VALUE

For purposes of this agreement, book value shall be the book value of the stock as reflected by the accounting records of the Corporation, as determined by an audit by the Corporation's accountants.

In the event of death, book value shall be determined as of the end of the first full month following the date of death of the deceased stockholder.

Baenen left Steen in 1974, and the Berg brothers continued to operate the company until R.W. Berg's death on August 10, 2001.

[¶ 3] Jean Berg, R.W. Berg's wife, was appointed personal representative of the estate, and shortly thereafter, the parties began negotiating over R.W. Berg's stock in the company. After the parties were unable to agree on a sales price for the purchase of R.W. Berg's shares, Steen brought this specific performance action, in May 2002, requesting that the district court enforce the stockholders' agreement by requiring the estate to sell R.W. Berg's shares of the company's stock to Steen for $148,650. According to Steen, an audit by its accountants ultimately determined the book value of the shares to be $160,741. The district court granted Steen's motion for summary judgment and ruled the estate must comply with the terms of the stockholders' agreement and sell the stock to Steen for $160,741 plus interest.

[¶ 4] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The estate's appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 27–02–04, 28–27–01, and 28–27–02.

II

[¶ 5] The dispositive issue in this case is whether Steen's action is barred by the nonclaim provisions of the Uniform Probate Code, N.D.C.C. ch. 30.1–19.

[¶ 6] A primary objective of a nonclaim statute is the expeditious and orderly processing of decedents' estates, and if claims against a decedent's estate are not timely filed, the claims are barred as a matter of law. *Murphy v. Murphy*, 1999 ND 118, ¶ 24, 595 N.W.2d 571. Section 30.1–19–03(2)(b), N.D.C.C., provides:

2. All claims against a decedent's estate which arise at or after the death of the decedent, including claims of the state and any subdivision thereof, whether due or to become due,

absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented as follows:

. . . .

b. Any other claim, within three months after it arises.

"Claims" are defined in N.D.C.C. § 30.1–01–06(7):

7. "Claims", in respect to estates of decedents and protected persons, includes liabilities of the decedent or protected person whether arising in contract, in tort, or otherwise, and liabilities of the estate which arise at or after the death of the decedent or after the appointment of a conservator, including funeral expenses and expenses of administration. The term does not include estate or inheritance taxes, or demands or disputes regarding title of a decedent or protected person to specific assets alleged to be included in the estate.

[¶ 7] There is no dispute that Steen's claim is untimely if the nonclaim statute applies. However, the district court concluded the nonclaim provisions of the Uniform Probate Code did not apply because Steen was not making a "claim" against the estate. The court reasoned Steen's action was not a "claim" because it "is not a claim for an amount due" and the company "is not seeking to extract damages from the decedent's estate." The court viewed Steen's action as an attempt "to make appropriate payment to the estate for the stock certificates that the corporation is entitled to recover[] pursuant to the Agreement," and it "would not reduce the corpus of the estate or the amount of property that would otherwise be subject to division."

[¶ 8] We have not previously addressed whether an action to enforce a corporate buy-sell agreement is a "claim" for purposes of the nonclaim provisions of the Uniform Probate Code. This Court has interpreted the meaning of a "claim" under N.D.C.C. § 30.1–01–06(7) on two occasions. In *Estate of Powers v. Powers,* 552 N.W.2d 785, 786 (N.D.1996), the decedent's nephew made an untimely claim against the estate based on the decedent's promise that, after the decedent's business was sold, the nephew's profit-sharing trust certificates would be paid in full. The nephew also asserted he was entitled to $10,000 for the appraised value of a vehicle he contended he "co-owne[d]" with the decedent. *Id.* We ruled the nephew's claim based on the profit-sharing trust certificates was time-barred, reasoning "[e]ven if the claim need not have been brought against the company rather than the Estate, and we construed [the nephew's] claim as a contract action based upon [the decedent's] alleged promise to him, [the nephew's] request clearly constitutes a creditor's claim against the Estate to which the non-claim statute applies." *Id.* at 786–87. Noting that the definition of "claims" did not include disputes regarding title of a decedent to specific assets alleged to be included in the estate, however, we concluded the "non-claim statute is not applicable to any dispute [the nephew] may have over title to the van by virtue of his asserted joint tenancy interest." *Id.* at 787.

[¶ 9] In *Murphy,* 1999 ND 118, ¶ 22, 595 N.W.2d 571, the intervenors claimed a twenty-two percent partnership interest in the Murphy Brothers Partnership, which included land and livestock. The personal representative of the estate of one of the alleged partners argued the intervenors' partnership claims were barred by their

failure to bring them in the probate proceeding. *Id.* at ¶ 24. The intervenors argued that their claim was not a "claim" for purposes of N.D.C.C. § 30.1–01–06(7) because they were partially claiming an interest in real property. *Murphy,* at ¶ 25. Relying on *Powers,* this Court concluded that the intervenors' partnership claim for proceeds from the sale of livestock had already been settled in the probate proceedings and that the intervenors had not "made a 'colorable showing' to specific assets alleged to be included in the estate" with regard to the other demands. *Id.* at ¶ 31. We reasoned "the claims of the Intervenors regarding their asserted partnership interests, to the extent not previously fully and finally litigated in other proceedings, would arise in tort or contract to which the non-claim statute is applicable," and ruled those claims were barred by the nonclaim statute. *Id.*

[¶ 10] Here, in concluding Steen's claim was not barred by the nonclaim statute, the district court relied on a statement in *Powers,* 552 N.W.2d at 787, in which this Court said:

> [N]on-claim statutes apply only to claims against the estate of a decedent which, if allowed, would reduce the corpus of the estate or the amount of property which would otherwise be subject to division or distribution among the heirs of an intestate decedent or the legatees and devisees of a testate decedent. *See, e.g., Matter of Estate of Pallister,* 13 Kan. App.2d 337, 770 P.2d 494 (1989); *Willbanks v. Goodwin,* 70 Or.App. 425, 689 P.2d 1004 (1984), *reversed on other grounds,* 300 Or. 181, 709 P.2d 213 (1985).

The district court reasoned the nonclaim provisions do not apply in this case because, "[l]ike in *Estate of Powers,* the plaintiff's claim would not reduce the corpus of the estate or the amount of property

ty that would otherwise be subject to division."

[¶ 11] The district court's reliance on the language in *Powers* is misplaced, because it relates to an alternative ruling of this Court. After holding the nonclaim statute did not apply to the nephew's claim of a joint tenancy interest in the vehicle, we further noted that the decedent's will provided that "if joint tenancy property 'does not so pass for any reason, I devise said property to the co-owner, survivor or named beneficiary.'" *Powers,* 552 N.W.2d at 787. We concluded the nephew's "assertion of rights under the specific bequest provision of the will cannot be regarded as a 'claim' against the estate for purposes of the non-claim statute," and relied upon *O'Connor v. Immele,* 77 N.D. 346, 43 N.W.2d 649 (1950), *Pallister,* and *Willbanks* as support for this conclusion. Those cases involved persons making claims against an estate as either the beneficiaries of a purported will or for specific performance of agreements to execute reciprocal wills naming themselves as beneficiaries. The cases merely stand for the general principle that the assertion of rights as a beneficiary under the terms of a will is not regarded as a claim against an estate. *See O'Connor,* 77 N.D. at 354–55, 43 N.W.2d at 654–55; *Pallister,* 770 P.2d at 495; *Willbanks,* 689 P.2d at 1007–08. Steen is not asserting any rights as a beneficiary of R.W. Berg's will, but is seeking to specifically enforce a contract R.W. Berg had entered into involving property that is a part of the estate. *Powers* provides no support for the district court's decision.

[¶ 12] In other Uniform Probate Code jurisdictions, courts have generally found that disputes over title to specific items of real or personal property, like the dispute over the vehicle in *Powers,* 552 N.W.2d at 787, are not "claims" under statutory coun-

terparts to N.D.C.C. § 30.1–01–06(7). *See, e.g., In re Estate of Renczykowski,* 409 N.W.2d 888, 891 (Minn.App.1987) (claim for farm equipment and machinery commenced before decedent's death not barred by nonclaim statute); *Matter of Howard,* 315 S.C. 356, 434 S.E.2d 254, 259 n. 8 (1993) (dispute over title to a gun was not a claim for purposes of nonclaim statute); *Labayog v. Labayog,* 83 Hawai'i 412, 927 P.2d 420, 441 (App.1996) (motion to enforce divorce decree ordering deceased husband to convey property to children was a demand regarding title of decedent and not subject to the nonclaim statute). We have found only one case in which a court has analyzed the Uniform Probate Code nonclaim provisions in connection with a stock purchase agreement. In *Wunschel v. IDA Holding Co.,* 407 N.W.2d 341, 342–43 (Iowa 1987), the Iowa Supreme Court interpreted Nebraska's Uniform Probate Code in determining whether the plaintiffs' contract action based on a stock purchase agreement against the estate of a party to the agreement was barred by the nonclaim statute. The plaintiffs sought to enforce the stock sale provisions of the agreement and require the estate to purchase their shares. *Id.* at 343. The Court concluded that Nebraska's four-month limitation period governing claims which arise at or after the death of the decedent applied, and because the claim was filed within the four-month period, the claim was not barred. *Id.* at 343–44.

[¶ 13] Although the fact situation in *Wunschel* differs from this case because Steen is attempting to force the estate to sell, rather than purchase, shares of stock, the *Wunschel* decision conforms with decisions of other non-Uniform Probate Code jurisdictions holding that nonclaim provisions apply to claims arising from buy-sell agreements. *See, e.g., Grossman v. Selewacz,* 417 So.2d 728, 730 (Fla.App.1982) (nonclaim statute applied to plaintiffs' op-

tion agreement to purchase decedent's stock); *Estate of Penzenik v. Penz Products, Inc.,* 749 N.E.2d 61, 63–64 (Ind.App. 2001) (nonclaim statute applied to corporation's attempt to enforce buy-sell agreement to require an estate to sell its shares of stock back to the corporation); *Spaceway Distrib. & Storage Co. v. Williamson,* 41 Ohio App.3d 187, 535 N.E.2d 321, 325 (1987) (nonclaim statute applied to corporation's claim under buy-sell agreement to require estate to sell decedent's stock back to the corporation).

■ [¶ 14] In this case, Steen argues its action against the estate is not a "claim" for purposes of N.D.C.C. § 30.1–01–06(7), because it does not involve liabilities or debt, but involves only a dispute over the title and ownership of R.W. Berg's stock certificates, which are specific, identifiable property. Although stock certificates might fall within the literal definition of tangible personal property, they are generally regarded as intangible property because their value is derived from the intangible rights they represent. *See State ex rel. Clayburgh v. American West Cmty. Promotions, Inc.,* 2002 ND 98, ¶ 17, 645 N.W.2d 196; *see also Grossman,* 417 So.2d at 731 (an option to purchase shares in a corporation is not an option to buy specific identifiable property). "Claims" under N.D.C.C. § 30.1–01–06(7) specifically include "liabilities of the decedent ... arising in contract." Steen would have no right to purchase the estate's shares of stock if it were not for the stockholders' agreement, a contract executed by R.W. Berg.

■ [¶ 15] We believe the decision of the court in *Estate of Leavitt,* 733 A.2d 348 (Me.1999), is instructive in resolving the issue. In *Leavitt,* at 348, an employee of the decedent filed an untimely claim under Maine's version of the Uniform Probate

Code against the estate of his employer, contending that he owned equitable title to the deceased's flower shop because the deceased had promised him the shop during his 32 years of employment there. The court rejected the employee's argument that his claim should be interpreted as an issue of title exempted from the definition of "claims" under the statutory equivalent of N.D.C.C. § 30.1–01–06(7) rather than as a contract claim against the decedent's estate. *Id.* at 350. The court reasoned:

> Wadsworth's claim cannot reasonably be construed as a title dispute regarding a piece of property; it is a claim that Leavitt breached his promise to devise the flower shop to Wadsworth in return for his years of employment. Such a claim falls squarely within section 1–201(4) and is subject to the time restrictions of the Code.... [C]reative labeling cannot exempt a "claim" from the requirements of the Probate Code.

*Id. Leavitt* is in accord with our decision in *Murphy,* 1999 ND 118, ¶¶ 25, 31, 595 N.W.2d 571, that merely casting a claim in terms of title to property is insufficient to avoid the time limitations of the nonclaim statute if the gist of the claim sounds in tort or in contract.

[¶ 16] We reject Steen's attempt to creatively label its claim as a dispute over title to the stock certificates exempt from the nonclaim statute. We conclude Steen's action to specifically enforce the stockholders' agreement is a claim that seeks to impose a liability on the estate based on a contract right to purchase shares of stock that have devolved to R.W. Berg's heirs. Because the nonclaim provisions apply to Steen's claim, and it is undisputed that the claim was untimely, we conclude the district court erred in awarding Steen specific performance of the stockholders' agreement.

## III

[¶ 17] It is unnecessary to address the other issues raised. The summary judgment is reversed.

[¶ 18] GERALD W. VANDE WALLE, C.J., and ZANE ANDERSON, D.J., concur.

[¶ 19] The Honorable ZANE ANDERSON, D.J., sitting in place of KAPSNER, J., disqualified.

CROTHERS, Justice, dissenting.

[¶ 20] I respectfully dissent because the non-claim statute does not apply to the stockholder's agreement ("Agreement"). I would affirm the District Court's conclusion on that issue but would remand for trial because of material issues of disputed fact regarding availability of the specific performance remedy and regarding the amount due under the Agreement.

[¶ 21] The estate argues the non-claim statute applies and that judicial decisions from other jurisdictions support the position. *See Wunschel v. Ida Holding Co., Inc.,* 407 N.W.2d 341 (Iowa 1987); *Estate of Penzenik v. Penz Prods., Inc.,* 749 N.E.2d 61 (Ind.Ct.App.2001); *Spaceway Distribution & Storage Co., Inc. v. Williamson,* 41 Ohio App.3d 187, 535 N.E.2d 321 (1987). The Company responds that the Uniform Probate Code ("UPC") does not apply because this case does not involve liabilities or a debt as necessary for a claim against the estate envisioned by the UPC, and because this Court held in *Matter of Estate of Powers,* 552 N.W.2d 785, 787 (N.D.1996), that the non-claim statute only applies to claims reducing the corpus of the estate or the amount of property otherwise subject to division.

[¶ 22] Both parties interpret the statute differently, but neither directly argues the statute is ambiguous. Yet the clear

import of their arguments, taken together, is that ambiguity exists. *See Phipps v. N.D. Dept. of Transp.*, 2002 ND 112, ¶¶ 15–16, 646 N.W.2d 704 (concluding that when each party argued for a different, but rational, interpretation of a word within a statute, an ambiguity existed). If a statute is ambiguous, "a court may resort to extrinsic aids, including legislative history, to interpret the statute." *In re G.R.H.*, 2006 ND 56, ¶ 15, 711 N.W.2d 587. The majority fails to perform proper statutory analysis to ascertain the meaning of North Dakota's statute and instead embarks on a lengthy discussion of cases from foreign jurisdictions with laws different than North Dakota's UPC. Doing so, this Court has failed to follow its own well-established precedent providing:

> Statutory interpretation is a question of law subject to full review upon appeal. Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in [the Century Code] are to be understood as thus explained. When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. In construing a statute, our duty is to ascertain the Legislature's intent, which initially must be sought from the statutory language itself, giving its plain, ordinary, and commonly understood meaning. We construe statutes as a whole and harmonize them to give meaning to related provisions.

*In re Estate of Kimbrell*, 2005 ND 107, ¶ 9, 697 N.W.2d 315 (citations and quotations omitted).

[¶ 23] Our non-claim statute provides:

> *All claims against a decedent's estate which arise at or after the death of the decedent, including claims of the state and any subdivision thereof, whether* due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, *are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented as follows:*
>
> . . . .
>
> b. Any other claim, *within three months after it arises.*

N.D.C.C. § 30.1–19–03(2) (emphasis added). The term "claims" is defined for purposes of the non-claim statute:

> "Claims", in respect to estates of decedents and protected persons, includes liabilities of the decedent or protected person whether arising in contract, in tort, or otherwise, and liabilities of the estate which arise at or after the death of the decedent or after the appointment of a conservator, including funeral expenses and expenses of administration. The term does not include estate or inheritance taxes, or demands or disputes regarding title of a decedent or protected person to specific assets alleged to be included in the estate.

N.D.C.C. § 30.1–01–06(7).

[¶ 24] First turning as we must to language of the statute, "claims" include *liabilities* of the decedent. The Company argues payment to the estate exceeding $160,000 cannot be rationally considered a "liability" of the estate. The estate responds that the Company's tender of the sum due under the Agreement provides inadequate compensation for the asset taken and, therefore, the alleged underpayment constitutes a liability in the sense the corpus of the estate will be reduced.

[¶ 25] "Liability" is not defined in the UPC. We therefore use the ordinary, usual and commonly accepted definition of the word to interpret the statute. N.D.C.C. § 1–02–02. Liability is defined as "the

quality or state of being liable," "something for which one is liable; [especially] pecuniary obligation" and "one that acts as a disadvantage." *Merriam–Webster's Collegiate Dictionary* 715 (11th ed.2003).

[¶ 26] A contract calling for payment to an estate is not a pecuniary obligation or a disadvantage of the estate. Therefore, the payment to the estate required by the Agreement appears to fall outside the bar of the non-claim statute. However, such a conclusion would be premature because a "claim" is defined not as *a liability,* but *"includes liabilities* of the decedent." N.D.C.C. § 30.1–01–06(7) (emphasis added). This requires consideration of the effect that inclusion of the term "includes" has on the meaning of the definition. Tenets of statutory construction require that we examine the context of the provision in question: " 'Statutes must be construed as a whole and harmonized ... to give meaning and effect to every word, phrase, and sentence.' " *Van Klootwyk v. Baptist Home, Inc.,* 2003 ND 112, ¶ 12, 665 N.W.2d 679 (quoting *Public Serv. Comm'n v. Wimbledon Grain Co.,* 2003 ND 104, ¶ 21, 663 N.W.2d 186).

[¶ 27] North Dakota's non-claim statute is part of the Century Code providing for administration of claims against an estate. Chapter 30.1–19, Creditors' Claims, contains provisions controlling notice to creditors and the presentation, classification, allowance and payment of claims. These many provisions of chapter 30.1–19 plainly are oriented towards creditors, not debtors, of the estate and resolving claims against an estate where someone wants to obtain payment *from* the estate. Importantly, nothing in the wording of these sections evince legislative intent that these same sections were enacted for resolution of obligations resulting in payments *to* the estate. Therefore, I part company with the majority and would hold the Agree-

ment in this case is not subject to the non-claim statute based on the language of the non-claim statute, the definitions of claims and liability, and the remaining statutes in chapter 30.1–19.

[¶ 28] My conclusion in this case is consistent with the prior holding in *Estate of Powers.* 552 N.W.2d at 787. In *Powers* this Court held "non-claim statutes apply only to claims against the estate of a decedent which, if allowed, would reduce the corpus of the estate or the amount of property which would otherwise be subject to division or distribution...." *Id.* Although based on considerably different facts, the conclusion reached in *Powers* is clear on its face and is consistent with my conclusion. I reach here that chapter 30.1–19 is aimed at creditors' claims and not situations where payments are made to an estate.

[¶ 29] I also note that the district court specifically relied on this Court's unequivocal holding in *Powers* to conclude the Agreement was not subject to the non-claim statute of the UPC. Yet the majority would reject the district court's reasonable—and required—reliance on *Powers* and reverse when the district court did not somehow divine that the explicit holding in *Powers* is not reliable precedent "because it relates to an alternative ruling of this Court." Majority opinion at ¶ 11. If indeed *Powers* stands for the limited proposition cited by the majority, that part of *Powers* should be overruled and not just marginalized as useless and confusing judicial debris.

[¶ 30] Daniel J. Crothers

Mary Muehlen Maring